```
1  TROUTMAN PEPPER LOCKE LLP
   Regina J. McClendon (SBN 184669)
2  regina.mcclendon@troutman.com
3  Meagan S. Tom (SBN 273489)
   meagan.tom@troutman.com
4  Three Embarcadero Center, Suite 800
5  San Francisco, CA 94111
   Telephone: (415) 477-5700
6  Fax: (415) 477-5710
7
   Attorneys for Defendant
8  LPP Mortgage, Inc. f/k/a LPP Mortgage Ltd.
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KLARA GIANNA GALLUSZ,<br><br>            Plaintiff,<br><br>vs.<br><br>LPP MORTGAGE, INC. F/K/A LPP MORTGAGE LTD.,<br><br>            Defendants. | CASE NO.: 3:25-cv-00885-JLS-BLM<br><br>**DECLARATION OF MELISSA SASSINE IN SUPPORT OF LPP MORTGAGE, INC.'S OPPOSITION TO EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Complaint Filed: April 10, 2025 |

I, Melissa Sassine, declare:

1. I am over the age of 18 years and am not a party to this action. The facts set forth below are known to me personally or have been obtained through my review of records kept in my employer's ordinary course of business, as explained in more detail below. If called as a witness, I could and would competently testify to the facts set forth herein.

2.     I am a Senior Vice President at MGC Mortgage, Inc. ("MGC"), the authorized loan servicer for LPP Mortgage, Inc. fka LPP Mortgage, Ltd. ("LPP"), the owner of the deed of trust secured by the property located at 3050 Rue De'Orleans, Unit 410, San Diego, California 92110 ("Property"), which is the subject of this motion.  I am also a Senior Vice President of CLMG Corp. ("CLMG"), the authorized custodian of the original loan records for LPP.  MGC maintains detailed records concerning the residential mortgage loans of LPP.  MGC, LPP and CLMG Corp. are all affiliated companies with ultimate common ownership and shared physical location.  I have been employed by CLMG, or one of its affiliates, for over 28 years. I am familiar with the manner and procedure by which the records of MGC[1], CLMG and LPP are obtained, prepared, and maintained.  In the course of my job duties, I regularly access LPP's records for the loans it owns.  Those records are obtained, prepared, and maintained by employees or agents of MGC in the performance of their regular business duties at or near the time, act, conditions, or events recorded thereon. The records are made either by persons with knowledge of the matters they record or from information obtained by persons with such knowledge.  It is MGC's business practice to maintain these records in the regular course of business. The documents referred to below and attached as exhibits hereto are such business records.

3.     I am familiar with MGC's servicing of the mortgage loan of borrower Klara Gianna Gallusz that was obtained on or about December 14, 2005, in the original principal amount of $195,500 and secured by a Deed of Trust recorded against the Property.  A true and correct copy of the promissory note memorializing the Loan, with its endorsements, is attached hereto as Exhibit 1.  A true and correct copy of the Deed of Trust pertaining to the Loan and recorded against the Property as document number 2005-1098367 in the Official Records of San Diego County is attached hereto as Exhibit 2.

---

[1] MGC, on its own or through its sub-servicer Dovenmuehle Mortgage, Inc. ("DMI"), is responsible for the servicing of the Loan.

4. Prior to signing this declaration, I personally inspected the ***original*** "wet-ink" Note for the Loan, which is stored in the vault that is onsite at my office building in Plano, Texas. I can attest to the fact that the document attached hereto as Exhibit 1 is a true and correct copy of the original contained in the vault.

5. LPP has owned the Loan since October 31, 2016. MGC began servicing the Loan effective April 1, 2017. True and correct copies of the Notice of Sale of Ownership of Mortgage Loan and Notice of Servicing Transfer are attached as Exhibits 3 and 4.

6. Beginning in October 2023, MGC, DMI, LPP, and CLMG began receiving a series of unusual documents and correspondence from Plaintiff. Some of the documents and correspondence received are described below.

7. On October 11, 2023, MGC received a letter from Plaintiff titled "Notice to Cease and Desist Conditional." MGC responded on October 12, 2023 rejecting Plaintiff's contentions. True and correct copies of the letter received October 11, 2023 and October 12, 2023 response letter are attached as Exhibits 5 and 6.

8. MGC received a letter dated April 22, 2024 from Plaintiff claiming the Loan was rescinded due to "ignorant mistake and error." The letter also included a recorded copy of a grant deed, purporting to convey title to the Property from Plaintiff to "The Libertas Imperium Trust." CLMG responded on April 30, 2024, declining Plaintiff's rescission demand. True and correct copies of the April 22, 2024 letter and attachments and April 30, 2024 response letter are attached as Exhibits 7 and 8.

9. MGC received five letters dated May 30, 2024 from Plaintiff regarding the Property. CLMG also received a letter dated May 30, 2024. MGC responded to these letters on June 5, 2024 and June 6, 2024, rejecting Plaintiff's contentions. True and correct copies of the May 30, 2024 letters and MGC's June 5, 2024 and June 6, 2024 responses are attached as Exhibits 9, 10 and 11.

10. MGC received letters dated June 6, 2024 titled "Credit Reporting Opt-Out Notice Exercising Disclosure Option" and June 24, 2024, titled "Notice to

Principals is Notice to Agents Notice to Agents is Notice to Principals" from Plaintiff. On July 11, 2024, MGC and LPP's attorney, Regina McClendon, responded to Plaintiff's letter providing copies of the requested documents and noted her opt-out request. True and correct copies of the June 6, 2024 and June 24, 2024 letters and the July 11, 2024 response are attached as Exhibits 12, 13, and 14.

11. MGC received two letters dated August 6, 2024, one titled "RESPA Qualified Written Request, TILA Request, Dispute of Debt and Debt Validation Letter." On September 6, 2024, Ms. McClendon responded rejecting Plaintiff's contentions and provided Plaintiff with documents. True and correct copies of the August 6, 2024 letters and the September 6, 2024 response are attached as Exhibits 15, 16, and 17.

12. MGC received a letter dated October 17, 2024 titled "RESPA Qualified Written Request (5 pages) – Second Request Abbreviated." On November 13, 2024, Ms. McClendon responded rejecting Plaintiff's contentions and again provided Plaintiff with documents. Ms. McClendon also offered to make the original "wet-ink" promissory note available for Plaintiff's inspection at her firm's Dallas, Texas office (because that is the closest location to our offices in Plano, Texas) and requested Plaintiff contact her to make arrangements. True and correct copies of the October 17, 2024 letter and the November 13, 2024 response are attached as Exhibits 18 and 19.

13. On or about November 9, 2024, MGC received a "Notice of Cease and Desist" regarding the Property signed by William Rory McKenzie, Trustee of the Libertas Imperium Trust. MGC determined no response was required. A true and correct copy of the "Notice of Cease and Desist" is attached as Exhibit 20.

14. MGC and LPP's counsel received correspondence dated November 18, 2024 titled "Notice of Rescission and Demand to Cease and Desist Foreclosure Proceedings." MGC determined no response was required. A true and correct copy of the correspondence dated November 18, 2024 is attached as Exhibit 21.

15. On November 27, 2024, DMI received an IRS Form 1099-B, which was improper. A true and correct copy of the IRS Form 1099-B is attached as Exhibit 22.

16. MGC received a letter dated November 25, 2024 titled "Notice of Rescission of Deed of Trust and Dispute of Foreclosure Proceedings." Ms. McClendon responded on January 3, 2025 regarding both the Notice of Rescission and IRS Form 1099-B, rejecting Plaintiff's contentions. True and correct copies of the November 25, 2024 letter and the January 3, 2025 response are attached as Exhibits 23 and 24.

17. MGC and LPP's counsel received correspondence dated December 2, 2024 regarding inspection of the original "wet-ink" promissory note. On December 12, 2024, Ms. McClendon responded rejecting Plaintiff's contentions. Ms. McClendon also reiterated the offer to make the original "wet-ink" promissory note available for inspection at her firm's Dallas, Texas office. However, MGC and LPP would not agree to the conditions Plaintiff sought to impose. True and correct copies of the December 2, 2024 letter and the December 12, 2024 response are attached as Exhibits 25 and 26.

18. MGC received a letter dated December 28, 2024 from AMCF Real Estate Private Foundational Trust Organization on behalf of Plaintiff, titled "Notice of Termination of Trustee due to Trustee Malfeasance." On January 8, 2025, Ms. McClendon responded rejecting Plaintiff's contentions and urging her to consult with a California-licensed attorney. True and correct copies of the December 28, 2024 letter and the January 8, 2025 response are attached as Exhibits 27 and 28.

19. MGC received multiple documents dated January 16, 2025 from "The EEON Foundation" on behalf of Plaintiff titled "Notice of Authority Under Power of Attorney in Fact and Demand for Compliance," "Statement of Accounting," "Formal Challenge of Disputed Debt, Demand for Proof, Audit, and Compliance with Federal Reserve Operating Circular No. 10 and BIC Program, and Notice of Intent to File Civil and Criminal RICO Charges, et al." and "Trust Protector Limited Power of

Attorney."  MGC determined no response was required.  True and correct copies of documents are attached as Exhibit 29.

20.  MGC received a letter dated January 27, 2025 titled "Qualified Written Request."  The requested documents were duplicative of documents that were previously provided.  On February 11, 2025, Ms. McClendon responded rejecting Plaintiff's contentions and advising that foreclosure proceedings would continue. True and correct copies of the January 27, 2025 letter and the February 11, 2025 response are attached as Exhibits 30 and 31.

21.  On January 28, 2025, Plaintiff sent two emails to DMI requesting documents.  On February 5, 2025, Ms. McClendon responded rejecting Plaintiff's contentions and advising that foreclosure proceedings would continue.  True and correct copies of the January 28, 2025 emails and the February 5, 2025 response are attached as Exhibits 32 and 33.

22.  MGC received a letter dated January 30, 2025 from "The EEON Foundation" on behalf of Plaintiff titled "Formal Demand for Accounting, Compliance, and Collateral Withdrawal under the Borrower-In-Custody Program and Federal Reserve Operating Circular No. 10."  The Loan is not pledged to the Federal Reserve as collateral, as part of a Borrower-In-Custody Program.  MGC determined no response was required.  A true and correct copy of the January 30, 2025 letter is attached hereto as Exhibit 34.

23.  MGC received a packet of correspondence from Plaintiff dated January 31, 2025 titled "Assignment of Satisfaction Agent" from "AMCF Real Estate Private Foundational Trust Organization acting under limited power of attorney" demanding proof that "tendering of the collateral security was for the total value of the application for the loan the Federal Reserve notes" and exercising the "right to the assignment of satisfaction of agreement."  The January 31, 2025 correspondence also demanded physical inspection of the Note and release of the Deed of Trust for failure to return the "tender collateral."  It also included another copy of the December 28, 2024

1  "Notice of Termination of Trustee due to Trustee Malfeasance." MGC determined no
2  response was required.  A true and correct copy of the January 31, 2025 packet
3  received by MGC is attached as Exhibit 35.

4      24.    MGC received two letters from Plaintiff dated February 19, 2025, both
5  from "AMCF Real Estate Private Foundational Trust Organization acting under
6  limited power of attorney."  The first demanded release of the Deed of Trust for
7  failure to document the "receipt of collateral security" and return the "tender
8  collateral."  The second was regarding claims of inaccurate payoff statement amounts
9  and again demanded inspection of the original Note.  MGC determined no response
10 was statutorily required to either letter.  True and correct copies of the February 19,
11 2025 letters are attached as Exhibits 36 and 37.

12     25.    On March 1, 2025, MGC received a letter from Plaintiff titled
13 "Certificate of Dishonor."  Ms. McClendon responded to the March 1, 2025 letter
14 rejecting Plaintiff's contentions and advising that foreclosure proceedings would
15 continue.  True and correct copies of the March 1, 2025 correspondence and March 7,
16 2025 response letter are attached as Exhibits 38 and 39.

17     26.    MGC received a letter from AMCF Real Estate Private Foundational
18 Trust Organization dated March 9, 2025 titled "Notice of Change Request for Original
19 Copy of Application for Loan," again requesting a "true copy of the original
20 promissory note" and demanding Plaintiff be able to review the original in person.
21 MGC determined no response was required.  A true and correct copy of the March 9,
22 2025, letter is attached as Exhibit 40.

23     27.    On March 13, 2025, Prober & Raphael, ALC received what appeared to
24 be a check from Plaintiff dated March 3, 2025 for "certified funds" in the amount of
25 $150,498.77.  The purported check represented a payoff of the Loan, based on figures
26 provided to Plaintiff on February 3, 2025, that was good through February 10, 2025.
27 A true and correct copy of the purported check received by Prober & Raphael, APC,
28 and the payoff statement provided to Plaintiff are attached as Exhibit 41.  The amount

7

DECLARATION OF MELISSA SASSINE
*Gallusz v. LPP Mortgage, Inc.*, Case No. 3:25-cv-00885-JLS-BLM

was insufficient to pay off the Loan, as the payoff quote was only good through February 10, 2025.

28. With JP Morgan Chase Bank's assistance, I determined the March 3, 2025 check attached as Exhibit 41 was fraudulent. This determination was made based on the following:

   a. I personally took the check to a Chase branch near my office, where the Chase teller confirmed the account listed on the check did not exist.
   b. The Chase teller confirmed that while the American Bankers Association (ABA) number on the check belongs to Chase, it is an ABA number commonly used for wires, not checking accounts.
   c. The check is missing the Chase Bank logo, and the Chase teller stated that Chase does not issue checks for "certified funds;" rather they provide cashier's checks.
   d. The check is missing many of the security features listed on the back of the check; for example, when copied, the word "void" is supposed to appear in the photocopy; here it does not.
   e. The name of the bank on the check itself, which should be the bank the funds are coming from, is also the same bank with the same address as the wire instructions provided with our payoff quote.
   f. Plaintiff added the handwritten words "without recourse" above her signature on the check, which has a specific legal meaning and implies she would not be liable if the check was not honored.

29. Because the purported payoff check was fraudulent, Plaintiff did not pay off her Loan and the check was not deposited. On March 25, 2025, Ms. McClendon informed Plaintiff that the Loan was not paid off as the check was fraudulent and that foreclosure proceedings would continue. A true and correct copy of the March 25, 2025 correspondence is attached as Exhibit 42.

30. On March 15, 2025, MGC received a document from AMCF Real Estate Private Foundational Trust Organization titled "Statement of Accounting" which was previously received along with various Federal Tax forms signed by EEON. MGC determined no response was required. True and correct copies of the documents received on March 15, 2025 are attached as Exhibit 43.

31. On March 21, 2025, MGC received an IRS Form 1099-C that Plaintiff filed. However, the 1099-C was improperly filed as the Loan has not been cancelled. A true and correct copy of the improper IRS Form 1099-C is attached as Exhibit 44.

32. On April 1, 2025, DMI received an email from Plaintiff requesting cancellation of the April 16, 2025 foreclosure sale based on her assertions that she submitted a full payoff of the Loan. On April 2, 2025, Ms. McClendon responded to Plaintiff's request advising that the Loan was not paid off and foreclosure proceedings would continue. True and correct copies of the April 1, 2025 email correspondence and April 2, 2025 response are attached as Exhibits 45 and 46.

33. To date, the Loan has not been paid off. Plaintiff is due for the April 2024 payment. Currently, her monthly mortgage payment is $1,713.13. The total amount to reinstate the Loan is $42,217.00. The total amount owed is 164,010.73.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 17, 2025, at Plano, Texas.

*Melissa Sassine* (signature)

Melissa Sassine