# Exhibit 1



SEE "INTEREST-ONLY ADD. TO ARM NOTE" ATTACHED HERETO AND MADE A PART HEREOF.
SEE "ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

MIN███████
MERS Phone: 1-888-679-6377

# ADJUSTABLE RATE NOTE
LOAN NO.: ███████

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| DECEMBER 14, 2005 | SOLANA BEACH | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

3050 RUE D'ORLEANS # 410, SAN DIEGO, CA  92110
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  192,500.00  (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
AMERICAN MORTGAGE EXPRESS FINANCIAL

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  6.500  %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the first day of each month beginning on  FEBRUARY, 2006
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  JANUARY 01, 2036  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at  AMERICAN MORTGAGE EXPRESS FINANCIAL
10251 VISTA SORRENTO PARKWAY, SUITE 300, SAN DIEGO, CA  92121
or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $  1,216.73  . This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) - Single Family - Fannie Mae UNIFORM INSTRUMENT

Initials: KS
Form 3520 1/01

VMP-838N (0210)                    Page 1 of 4                    LENDER SUPPORT SYSTEMS INC. 838NXX.NEW (02/03)

Exhibit 1

Page 2 of 879



**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of _____ JANUARY, 2011 _____, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____ TWO AND ONE QUARTER _____ percentage points ( _____ 2.250 _____ %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than _____ 12.500 _____ % or less than _____ 2.250 _____ %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than _____ TWO AND 000/1000THS _____ percentage point(s) ( _____ 2.000 _____ %) from the rate of interest I have been paying for the preceding _____ 6 _____ months. My interest rate will never be greater than _____ 12.500 _____ % .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Exhibit 1

Page 3 of 879



## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

VMP-838N (0210)                    Page 3 of 4                    Form 3520 1/01

Exhibit 1

Page 4 of 879



**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)     _____ (Seal)
KLARA GIANNA GALLUSZ                -Borrower                                          -Borrower

_____ (Seal)     _____ (Seal)
                                   -Borrower                                          -Borrower

_____ (Seal)     _____ (Seal)
                                   -Borrower                                          -Borrower

_____ (Seal)     _____ (Seal)
                                   -Borrower                                          -Borrower

                                                          [Sign Original Only]

VMP-838N (0210)                    Page 4 of 4                              Form 3520 1/01

Exhibit 1

Page 5 of 879



Exhibit 1

Page 6 of 879



### INTEREST-ONLY ADDENDUM
### TO ADJUSTABLE RATE PROMISSORY NOTE

MIN: ███
MERS Phone: 1-888-679-6377

LOAN NUMBER: ███

PROPERTY ADDRESS: 3050 RUE D'ORLEANS # 410, SAN DIEGO, CA  92110

THIS ADDENDUM is made this  14th  day of      DECEMBER, 2005      , and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to
AMERICAN MORTGAGE EXPRESS FINANCIAL

(the "Lender").

THIS ADDENDUM supersedes Section 3(A), 3(B), 4(C) AND 7(A) of the Note. None of the other provisions of the Note are changed by this Addendum.

3.    **PAYMENTS**

(A)    Time and Place of Payments

I will pay interest by making payments every month for the first  120  payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues. I will pay principal and interest by making payments every month thereafter for the next  240  payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

I will make my monthly payments on the  1st  day of each month beginning on FEBRUARY, 2006      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on JANUARY 01, 2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at
10251 VISTA SORRENTO PARKWAY, SUITE 300, SAN DIEGO, CA  92121
or at a different place if required by the Note Holder.

(B)    Amount of My Initial Monthly Payments

My initial monthly payments will be in the amount of U.S. $ 1,042.71      . This payment amount is based on the original principal balance of the Note. This payment amount may change.

Form 603E

Page 1 of 2

LENDER SUPPORT SYSTEMS INC. AUIBONTE.ADD E0604)

Initials

Exhibit 1

Page 7 of 879



**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(C)    Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE QUARTER percentage point(s) ( 2.250 %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment will not be reduced due to voluntary prepayments.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)    Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of interest for the first 120 payments, 5.00 % of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

_Klara Gianna Gallusz_____(Seal)    _____(Seal)
KLARA GIANNA GALLUSZ      -Borrower                                  -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                                  -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                                  -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                                  -Borrower

Form 603E                              Page 2 of 2

Exhibit 1

Page 8 of 879



## ADDENDUM TO NOTE

LOAN NO.:

This addendum is made DECEMBER 14, 2005 and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
3050 RUE D'ORLEANS # 410, SAN DIEGO, CA 92110

### AMENDED PROVISIONS
In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows:

### ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
**Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 12.500 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000THS percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than 12.500 %. My interest rate will never be less than 2.250 %.

### UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Thereof, Trustor has executed this addendum.

_____
Witness

KLARA GIANNA GALLUSZ       12-14-05
(Date)                     (Date)

_____        _____
(Date)                                 (Date)

1201 LIBOR Addendum to Note (01/01)          LENDER SUPPORT SYSTEMS, INC. AURA1201.AUR (08/03)

Exhibit 1

Page 9 of 879

# Exhibit 2

DOC #    2005-1098367

20484

58044687-11

DEC 22, 2005    4:19 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:            90.00
PAGES:           28         DA:      1

2005-1098367

Recording requested by:
CHICAGO TITLE COMPANY

Recording Requested By:
AMERICAN MORTGAGE EXPRESS FINANCIAL

Return To:
AMERICAN MORTGAGE EXPRESS FINANCIAL

10251 VISTA SORRENTO PARKWAY, SUITE 300
SAN DIEGO, CA  92121

Prepared By:

APN: 441-090-39-63

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

LOAN NO.:                                    MIN
ESCROW NO.:  5█████████                      MERS Phone: 1-888-679-8377

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated            **DECEMBER 14, 2005**
together with all Riders to this document.
**(B) "Borrower" is**
KLARA GIANNA GALLUSZ, A SINGLE WOMAN

Borrower's address is 3050 RUE D ORLEANS # 410, SAN DIEGO, CA  92110
Borrower is the trustor under this Security Instrument.
**(C) "Lender" is**
AMERICAN MORTGAGE EXPRESS FINANCIAL

Lender is a  CORPORATION
organized and existing under the laws of  CALIFORNIA

Initials: KG

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01
VMP-6A(CA) (0207)                    Page 1 of 15        LENDER SUPPORT SYSTEMS, INC MERS6ACA.NEW (05/04)

Exhibit 2
Page 11 of 879

**20485**

Lender's address is
10251 VISTA SORRENTO PARKWAY, SUITE 300, SAN DIEGO, CA 92121
(D) "Trustee" is
CHICAGO TITLE INSURANCE COMPANY
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated      DECEMBER 14, 2005
The Note states that Borrower owes Lender

ONE HUNDRED NINETY TWO THOUSAND FIVE HUNDRED AND NO/100 X X X X X X X X X X X X X X X
Dollars
(U.S. $ 192,500.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    JANUARY 01, 2036                 .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "RIDERS" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [XX] Adjustable Rate Rider | [XX] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |

[XX] Other(s) [specify] INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
ADDENDUM TO ADJUSTABLE RATE RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: KR

VMP-6A(CA) (0207)                        Page 2 of 15                        Form 3005 1/01

Exhibit 2

Page 12 of 879

**20486**

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                     of                     SAN DIEGO                     :
[Type of Recording Jurisdiction]                     [Name of Recording Jurisdiction]

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 441-090-39-63                     which currently has the address of
                    3050 RUE D'ORLEANS # 410                     [Street]
          SAN DIEGO                     [City] , California     92110     [Zip Code]
("Property Address"):

      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

      BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

VMP-6A(CA) (0207)                     Page 3 of 15                     Initials:            Form 3005  1/01

Exhibit 2

Page 13 of 879

20487

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Exhibit 2

Page 14 of 879

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Exhibit 2

Page 15 of 879

20489

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Exhibit 2

Page 16 of 879

20490

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Exhibit 2

Page 17 of 879

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

VMP-6A(CA) (0207)                    Page 8 of 15                    Initials: KR    Form 3005 1/01

Exhibit 2

Page 18 of 879

20492

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

VMP-6A(CA) (0207)                          Page 9 of 15                          Initials: KS    Form 3005 1/01

Exhibit 2

Page 19 of 879

20493

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

VMP-6A(CA) (0207)                          Page 10 of 15                          Form 3005 1/01

Exhibit 2

Page 20 of 879

20494

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: _____

VMP-6A(CA) (0207)                    Page 11 of 15                    Form 3005 1/01

Exhibit 2

Page 21 of 879

20495

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Exhibit 2

Page 22 of 879

20496

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: KC

VMP-6A(CA) (0207)                    Page 13 of 15                    Form 3005  1/01

Exhibit 2

Page 23 of 879

20497

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
                        -Witness

_____
                        -Witness


*Klara Gianna Gallusz*     _____(Seal)          _____(Seal)
KLARA GIANNA GALLUSZ           -Borrower                                -Borrower


_____(Seal)          _____(Seal)
                        -Borrower                                -Borrower


_____(Seal)          _____(Seal)
                        -Borrower                                -Borrower


_____(Seal)          _____(Seal)
                        -Borrower                                -Borrower


VMP-6A(CA) (0207)                Page 14 of 15                Form 3005  1/01

Exhibit 2

Page 24 of 879

20498

State of CALIFORNIA
County of SAN DIEGO                                    } ss.

On DECEMBER 19, 2005    before me,   Claudette Vera Cruz

                                                        personally appeared

KLARA GIANNA GALLUSZ

                                        , ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                                                        (Seal)

```
CLAUDETTE VERA CRUZ
Commission # 1502632
Notary Public - California
San Diego County
My Comm. Expires Jul 30, 2008
```

VMP-6A(CA) (0207)                    Page 15 of 15                    Initials: _____
                                                                      Form 3005 1/01

Exhibit 2
Page 25 of 879

20499

Loan Name: KLARA GIANNA GALLUSZ                    LOAN NO.: ▮▮▮▮▮▮

Property Address: 3050 RUE D'ORLEANS # 410, SAN DIEGO, CA  92110

## EXHIBIT  "A"
### LEGAL DESCRIPTION OF PROPERTY

LENDER SUPPORT SYSTEMS INC.  EX-A.FRM  (03/98)

Exhibit 2

Page 26 of 879

20500

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)
SEE "ADDENDUM TO ARM RIDER" ATTACHED HERETO AND MADE A PART HEREOF.
SEE "INTEREST-ONLY ADDENDUM TO ARM RIDER" ATTACHED HERETO AND MADE A PART HEREOF.
LOAN NO.: ▮▮▮▮▮▮▮          MIN: ▮▮▮▮▮▮▮
                          MERS Phone: 1-888-679-6377

THIS ADJUSTABLE RATE RIDER is made this    14th   day of         DECEMBER, 2005       ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
AMERICAN MORTGAGE EXPRESS FINANCIAL

("Lender") of the same date and covering the property described in the Security Instrument
and located at:
            3050 RUE D'ORLEANS # 410, SAN DIEGO, CA  92110
                        [Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of        6.500        %. The Note provides
for changes in the interest rate and the monthly payments, as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of        JANUARY, 2011       ,
and on that day every       6th        month thereafter. Each date on which my interest rate
could change is called a "Change Date."
**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for six month U.S. dollar-denominated
deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most
recent Index figure available as of the first business day of the month immediately preceding
the month in which the Change Date occurs is called the "Current Index."

Initials: _____

**Form 3138 1/01**

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN
THE WALL STREET JOURNAL) - Single Family - **Fannie Mae Uniform Instrument**
**VMP-838R (0402)**          Page 1 of 4          LENDER SUPPORT SYSTEMS INC. 838R.NEW (07/04)

Exhibit 2

20501

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE QUARTER                                            percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.500 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000THS                                            percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 12.500 % .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

VMP-838R (0402)                    Page 2 of 4                    Form 3138 1/01

Initials:

Exhibit 2

Page 28 of 879

20502

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**VMP-838R (0402)**                    Page 3 of 4                    Initials: _KS_    Form 3138 1/01

Exhibit 2

Page 29 of 879

20503

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)          _____(Seal)
KLARA GIANNA GALLUSZ          -Borrower          -Borrower

_____(Seal)          _____(Seal)
-Borrower          -Borrower

_____(Seal)          _____(Seal)
-Borrower          -Borrower

_____(Seal)          _____(Seal)
-Borrower          -Borrower

VMP-838R (0402)          Page 4 of 4          Form 3138 1/01

Exhibit 2

Page 30 of 879

20504

# CONDOMINIUM RIDER

LOAN NO.: ████████

MIN: ████████
MERS Phone: 1-888-679-6377

THIS CONDOMINIUM RIDER is made this    14th    day of    DECEMBER, 2005    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
AMERICAN MORTGAGE EXPRESS FINANCIAL

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:
3050 RUE D'ORLEANS # 410, SAN DIEGO, CA 92110
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:
PACIFIC ISLE
[Name of Condominium Project]
(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

---

**MULTISTATE CONDOMINIUM RIDER** - Single Family -
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
V-8R (0411)                          Page 1 of 3

Initials: KG
Form 3140 1/01
LENDER SUPPORT SYSTEMS INC. 8R.NEW (03/05)

Exhibit 2

Page 31 of 879

*20505*

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials:

**V-8R (0411)**                     Page 2 of 3                     Form 3140 1/01

Exhibit 2

Page 32 of 879

20506

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this  Condominium Rider.

_Klara Gianna Gallusz_____ (Seal)          _____ (Seal)
KLARA GIANNA GALLUSZ              -Borrower                                                    -Borrower

_____(Seal)          _____(Seal)
                                                 -Borrower                                                    -Borrower

_____(Seal)          _____(Seal)
                                                 -Borrower                                                    -Borrower

_____(Seal)          _____(Seal)
                                                 -Borrower                                                    -Borrower

**V-8R (0411)**                    Page 3 of 3                    **Form 3140 1/01**

Exhibit 2

*20507*

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE RIDER

LOAN NO.: ▮▮▮▮▮                                    MIN: ▮▮▮▮▮▮▮▮
                                                   MERS Phone: 1-888-679-6377

PROPERTY ADDRESS: 3050 RUE D'ORLEANS # 410, SAN DIEGO, CA 92110

**THIS ADDENDUM** is made this    14th    day of DECEMBER, 2005            , and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to
AMERICAN MORTGAGE EXPRESS FINANCIAL

(the "Lender").

**THIS ADDENDUM** supersedes Section 4(C) of the Rider.  None of the other provisions of the Note are changed by this Addendum.

4.     **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
       (C)     **Calculation of Changes**
               Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO AND ONE QUARTER                        percentage point(s) ( 2.250    %) to the Current Index
for such Change Date.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

               During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance.  At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note.  The result of this calculation will be the new amount of my monthly payment.  After the end of the Interest-Only Period, my payment will not be reduced due to voluntary prepayments.

Initials: ▮▮

Form 603F                        Page 1 of 2         LENDER SUPPORT SYSTEMS INC. AURIORDR.ADD (06/04)

Exhibit 2

20508

_Klara Gianna Gallusz_ (Seal)
KLARA GIANNA GALLUSZ            -Borrower

_____(Seal)
                        -Borrower

_____(Seal)
                        -Borrower

_____(Seal)
                        -Borrower

_____(Seal)
                        -Borrower

_____(Seal)
                        -Borrower

_____(Seal)
                        -Borrower

_____(Seal)
                        -Borrower

Page 2 of 2

Exhibit 2

Page 35 of 879

20509

# ADDENDUM TO ADJUSTABLE RATE RIDER

MIN: ███████████                                        LOAN NO.: ████████
MERS Phone: 1-888-679-6377

This addendum is made  DECEMBER 14, 2005  and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
3050 RUE D'ORLEANS # 410, SAN DIEGO, CA  92110

## AMENDED PROVISIONS

In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 12.500     % or less than     2.250     %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than   TWO AND 000/1000THS percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding six (6) months.  My interest rate will never be greater than     12.500     %.  My interest rate will never be less than     2.250     %.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Initials:

1202 LIBOR Addendum to Rider                Page 1 of 2              LENDER SUPPORT SYSTEMS, INC. AURA1202.AUR (07/05)

Exhibit 2
Page 36 of 879

20510

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Thereof, Trustor has executed this addendum.

Witness

_____

_____(Seal)        _____(Seal)
KLARA GIANNA GALLUSZ              -Borrower                                              -Borrower

_____(Seal)        _____(Seal)
                                 -Borrower                                              -Borrower

1202 LIBOR Addendum to Rider                    Page 2 of 2

Exhibit 2

Page 37 of 879

# DESCRIPTION

20511

Order No. 058044687

A CONDOMINIUM COMPOSED OF:

PARCEL NO. 1:

AN UNDIVIDED ONE-THREE HUNDRED THIRTY-THIRD (1/333RD) FEE SIMPLE INTEREST AS A TENANT IN
COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING WITHOUT LIMITATION THE COMMON AREAS
DEFINED IN THE DECLARATION REFERRED TO BELOW, IN LOT 1 OF CAROUSEL ISLE, IN THE CITY OF
SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 10056,
FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, APRIL 8, 1981. EXCEPTING
THEREFROM ALL LIVING AREA UNITS, BALCONIES, PATIOS, STORAGE SPACES, TANDEM PARKING
SPACES, AND PARKING SPACES AS SHOWN ON THE CONDOMINIUM PLAN RECORDED DECEMBER 4, 1981 AS
FILE NO. 81-382510 OF OFFICIAL RECORDS.

ALSO EXCEPT ALL MINERALS, OILS, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES AND ALL
UNDERGROUND WATER IN OR UNDER OR WHICH MAY BE PRODUCED FROM SAID LOT WHICH UNDERLIES A
PLAN PARALLEL TO AN 550 FEET BELOW THE PRESENT SURFACE OF SAID LOT FOR THE PURPOSE OF
PROSPECTING FOR, THE EXPLORATION, DEVELOPMENT, PRODUCTION, EXTRACTION AND TAKING OF SAID
MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES AND WATER FROM SAID LOT BY
MEANS OF MINES, WELLS, DERRICKS OR OTHER EQUIPMENT FROM SURFACE LOCATIONS ON ADJOINING OR
NEIGHBORING LAND OR LYING OUTSIDE OF THE ABOVE-DESCRIBED LOT, IT BEING UNDERSTOOD THAT
THE OWNER OF SUCH MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES AND WATER,
AS SET FORTH ABOVE, SHALL HAVE NO RIGHT TO ENTER UPON THE SURFACE OF ANY PORTION THEREOF
ABOVE SAID PLANE PARALLEL TO AND 550 FEET BELOW THE PRESENT SURFACE OF THE SAID LOT FOR
ANY PURPOSE WHATSOEVER.

PARCEL NO. 2:

LIVING AREA UNIT LA-210, BALCONY B---, TANDEM PARKING SPACE TPS---, PARKING SPACE, PS-22
AND STORAGE SPACE 16, AS SHOWN AND DESCRIBED ON THE CONDOMINIUM PLAN RECORDED DECEMBER 4,
1981 AS FILE NO. 81-382510 OF OFFICIAL RECORDS OF SAN DIEGO COUNTY, CALIFORNIA.

PARCEL NO. 3:

A NON-EXCLUSIVE EASEMENT FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE,
ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES APPURTENANT TO PARCEL
2 DESCRIBED HEREIN THRU THE COMMON AREA AS THE COMMON AREA IS SET FORTH IN THE
DECLARATION OF RESTRICTIONS RECORDED DECEMBER 4, 1981 AS FILE NO. 81-382511 OF OFFICIAL
RECORDS AND ANY AMENDMENTS THERETO.

PDONLY --11/17/97bk

Exhibit 2

# Exhibit 3

REPRESENTATION OF PRINTED DOCUMENT

# FAY SERVICING

P.O. Box 619063
Dallas, TX 75261-9063

November 14, 2016

1-775-04984-0000048-001-01-000-000-000-000

KLARA GALLUSZ
1350 COLUMBIA ST UNIT 503
SAN DIEGO CA  92101-3455

**404 NOTICE**

**NOTICE OF SALE OF OWNERSHIP OF MORTGAGE LOAN**

Under federal law, borrowers are required to be notified in writing whenever ownership of a mortgage loan secured by their principal dwelling is sold, transferred or assigned (collectively, "sold") to a new lender.  This notice is to inform you that your prior lender has sold your mortgage loan (see loan information below) to the new lender identified below.

**The new lender identified below is not the servicer of your loan.  The servicer (identified below) acts on behalf of the new lender to handle the ongoing administration of your loan, including the collection of mortgage payments.   Please send your mortgage payments as directed by the servicer, and not to the new lender.  Payments sent to the new lender instead of the servicer may result in late charges on your loan and your account becoming past due.   Neither the new lender nor the servicer is responsible for late charges or other consequences of payments sent to the new lender.**

**SHOULD YOU HAVE ANY QUESTIONS REGARDING YOUR LOAN, PLEASE CONTACT THE SERVICER USING THE CONTACT INFORMATION SET FORTH BELOW.  The servicer is authorized to handle routine inquiries and requests regarding your loan and, if necessary, to inform the new lender of your request and communicate to you any decision with respect to such request.**

Please note that the sale of your loan to the new lender may also result in a change of servicer.  If this occurs, you will receive a separate notice, required under federal law, providing information regarding the new servicer.

| LOAN INFORMATION |
| --- |
| Date of Loan: 12/14/2005 |
| Original Amount of Loan: $192,500.00 |
| Date Your Loan was Sold to the New Lender: 10/31/2016 |
| Prior Loan Number: ■■■■ |
| Current Loan Number: ■■■■■■■ |
| Address of Mortgaged Property:  3050  RUE D' ORLEANS 410 |
|                                 SAN DIEGO CA  92110 |

Exhibit 3

INTERNET REPRINT

REPRESENTATION OF PRINTED DOCUMENT

**SERVICER INFORMATION**

Name:                                                      Fay Servicing, LLC
Mailing Address:                                   Attn: Customer Service Department
                                                               P.O. Box 809441
                                                               Chicago, IL 60680-9441
Telephone Number (Toll free):            1-800-495-7166
Website:

Scope of responsibilities: The servicer is responsible for all ongoing administration of your loan, including receipt and processing of payments, resolution of payment-related issues, and response to any other inquiries you may have regarding your loan.

**NEW LENDER INFORMATION**

**Please be advised that all questions involving the administration of your loan (including questions related to payments, deferrals, modifications or foreclosures) should be directed to the servicer at the number above and/or the agent (if any) of the new lender identified below, and not to the new lender.  The new lender does not have access to information relating to the administration of your loan, and will not be able to answer most loan-related questions.**

Name:                                                      LPP Mortgage Ltd.
Mailing Address **(not for payments)**:    6000 Legacy Drive
                                                               Plano, TX 75024
Telephone Number:                             (866) 964-0455

**AGENT INFORMATION** (If the new creditor has granted an agent other than the servicer authority to act on its behalf, contact information for such agent will appear below):

Name:
Mailing Address:

Telephone Number (Toll free):

**Partial Payments**: The Servicer, on behalf of the lender, may hold partial payments in a separate account until you pay the remainder of the payment, and will then apply the full periodic payment to your loan. If your loan is sold, the new lender may have a different partial payment policy.

The transfer of the lien associated with your loan is, or in the future may be, recorded in the public records of the local County Recorder's office for the county or local jurisdiction where your property is located.  Ownership of your loan may also be recorded on the registry of the Mortgage Electronic Registrations System at 1818 Library Street, Suite 300, Reston, VA 20190.

Exhibit 3

INTERNET REPRINT

# Exhibit 4



Mortgage Servicing
1 Corporate Drive, Suite 360
Lake Zurich, IL 60047-8945
www.mgcmortgage.com
Customer Service 1-877-471-7888

Klara Gia Gallusz
1350 Columbia Street, Ste. 503
San Diego , CA 92101

RE:    **Old Loan Number:** ███████

       **New Loan Number:** █████████

### NOTICE OF SERVICING TRANSFER

Dear Mortgagor(s):

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being transferred from Fay Mortgage Servicing ("Present Servicer") to MGC Mortgage, Inc., ("New Servicer"), who has engaged Dovenmuehle Mortgage Inc., to subservice your loan, effective April 1, 2017.

The transfer of the servicing of the mortgage loan will not change anything else about your loan.

Except in limited circumstances, the law requires that your Present Servicer send you this notice at least 15 days before the effective date of the transfer, or at closing.  Your New Servicer must also send you this notice no later than 15 days after the effective date, or at closing.  In this case, all necessary information is combined in this one notice.

If you have any questions for either Present Servicer or New Servicer about your mortgage loan or this transfer, please contact them using the information below:

Present Servicer:                              New Servicer:

Fay Mortgage Servicing                         MGC Mortgage, Inc. (by Dovenmuehle Mortgage, Inc.)
Customer Service Department                    Customer Service Department
800-495-7166                                   1-877-471-7888
440 La Salle, Suite 2000                       1 Corporate Drive, Suite 360
Chicago, IL 60605                              Lake Zurich, IL 60047-8945

Present Servicer is currently collecting your payments.  Present Servicer will stop accepting payments from you after March 31, 2017.  New Servicer will start accepting payments from you on April 1, 2017.

The due date of your next payment is: 06/01/2017

**Send all payments due on or after April 1, 2017 to New Servicer at the Payment Address set forth below.**  Please use the enclosed temporary coupon to make your next payment.

The Business Address for New Servicer is:    1 Corporate Drive, Suite 360
                                             Lake Zurich, IL 60047-8945

The Payment Address for New Servicer is:     PO Box 7168
                                             Pasadena, CA 91109-7168

Exhibit 4

Page 43 of 879

If you are making payments to Present Servicer by means of automatic deduction, this service will not continue with New Servicer. If you would like to begin using automatic deductions with New Servicer, please sign the new automatic payment form enclosed, and submit the form to New Servicer. A copy of the Authorization Agreement is enclosed for you to keep. The New Servicer would then notify you of the month in which the automatic deductions will begin. Until then, please make your regular payments by check to the New Servicer.

**If you are currently using an online service or 3rd party bill service to pay your mortgage payment, the payee information and the loan number will need to be changed to the payment address and new loan number provided within this letter.**

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by Present Servicer on or before its due date may not be treated by New Servicer as late, and a late fee may not be imposed on you.

At year-end, you will receive two statements of account; one reflecting all payments made to Present Servicer and one from New Servicer. You will need to combine the appropriate information on both statements when filing your tax return for the applicable year.

Bernadette McDonnell
Authorized Signer
MGC Mortgage, Inc.

March 17, 2017

**Please use the enclosed envelope with the temporary coupon below to make your next payment.**

---

**TEMPORARY COUPON**

Klara Gia Gallusz
1350 Columbia Street, Ste. 503
San Diego , CA 92101

New Loan Number: ██████████

Payment Amount: $1,296.97

| Late Charges | $ |
|---|---|
| **Additional Principal** | $ |
| **Amount of Check** | $ |

MGC Mortgage, Inc.
PO Box 7168
Pasadena, CA 91109-7168

Exhibit 4

Re: **Procedure for Submitting Written Notices of Error and Written Requests for Information**

Dear Mortgagor(s):

The federal Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. 2605), provides you with certain rights related to resolving errors and requesting information about your mortgage loan account. If you send a "Qualified Written Request," "Notice of Error" or "Request for Information" to your servicer, your servicer must provide you with a written acknowledgement within 5 days of receipt of your request.

For purposes of this procedure for submitting written Notices of Error, Requests for Information and Qualified Written Requests, a "day" means a calendar day excluding legal public holidays, Saturdays and Sundays.

A "Notice of Error" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which asserts an error and that includes your name, information that enables the servicer to identify your mortgage loan account, and the error you believe has occurred. A Qualified Written Request that asserts an error related to the servicing of a mortgage loan account is considered a Notice of Error.

A "Request for Information" is any written request for information from you, other than notice on a payment coupon or other payment medium supplied by the servicer, that includes your name along with information that enables the servicer to identify your mortgage loan account and states the information you are requesting with respect to your mortgage loan account. A Qualified Written Request that requests information relating to the servicing of a mortgage loan is considered a Request for Information.

A "Qualified Written Request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request.

While some types of requests have shorter time periods for response [e.g. 10 days for requests for owner/assignee contact information; 7 days for errors relating to the failure to provide an accurate payoff balance within the required time period; or the earlier of the foreclosure sale date or 30 days from receipt of an error related to the servicer improperly making the first required notice or filing in the foreclosure process or scheduling a foreclosure sale, if the servicer receives the letter more than 7 days before the sale], generally, your servicer has a period of 30 days from receipt of your Notice of Error or Request for Information to provide you with a written response. For most Notices of Error or Requests for Information that it receives, the servicer may utilize an additional 15-day extension for its response. In all cases, before the end of the initial 30-day period, the servicer will provide you with written notice of any 15-day extension as well as its reasons for the extension.

The written response will provide notification that:

- For Notices of Error: The error you identified has been corrected; the effective date of the correction; and contact information, including a phone number, for further assistance; **or** upon reasonable investigation, the servicer has determined no error occurred; a statement of its reasons for reaching this conclusion and your right to request the document relied upon by the servicer in reaching its conclusion; and contact information, including a phone number, for further assistance.

- For Requests for Information: The requested information is attached; **or** upon reasonable investigation, the servicer has determined that the requested information is not available, a statement of its reasons for this conclusion, and contact information, including a phone number, for further assistance.

For the 60-day period following receipt of your correspondence, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such Notice of Error. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

*From time to time during the servicing of your loan, you may receive billing statements and other correspondence from the servicer which advises you that questions or inquiries may be directed to various departments including, but not limited to, Customer Service or Collections.* **However, please note that in order to receive the rights and protections afforded to you by RESPA for Notices of Error and Requests for Information, as outlined in this letter, you <u>must</u> send your written correspondence <u>only</u> to the following address, <u>including the specific Attention line noted</u>:**

> **MGC Mortgage, Inc.**
> **Attention: NOE1290**
> **1 Corporate Drive, Suite 360**
> **Lake Zurich, Illinois 60047-8945**

Exhibit 4

Rev. 10/16



| **FACTS** | **WHAT DOES MGC MORTGAGE, INC. DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>■ Social Security number and account balances<br>■ account transactions and transaction history<br>■ credit history and credit scores<br><br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons MGC Mortgage, Inc. chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does MGC Mortgage, Inc. share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes –** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes –** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | No | WE DON'T SHARE |
| **For our affiliates' everyday business purposes –** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes –** information about your creditworthiness | No | WE DON'T SHARE |
| **For nonaffiliates to market to you** | No | WE DON'T SHARE |

| **Questions?** | Call **877-471-7888** or go to **www.mgcmortgage.com** |
|---|---|

Exhibit 4

**Page 2**

## What we do

| | |
|---|---|
| How does MGC Mortgage, Inc. protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| How does MGC Mortgage, Inc. collect my personal information? | We collect your personal information, for example, when you<br><br>■ give us your income information or provide employment information<br>■ provide account information or give us your wage statements<br>■ pay us by check<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br><br>■ sharing for affiliates' everyday business purposes – information about your creditworthiness<br>■ affiliates from using your information to market to you<br>■ sharing for nonaffiliates to market to you<br><br>State law and individual companies may give you additional rights to limit sharing. |

## Definitions

| | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>■ *MGC Mortgage, Inc. does not share with affiliates.* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>■ *MGC Mortgage, Inc. does not share with nonaffiliates so they can market to you.* |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>■ *MGC Mortgage, Inc. does not jointly market.* |

Exhibit 4

Page 47 of 879

# AUTOMATIC PAYMENT PROGRAM ("APP")

ORIGINAL
RETURN FOR PROCESSING

**Do you want to save time and postage every month? Explore MGC Mortgage, Inc.'s Free Automatic Payment Program (APP).**

## HOW DOES THE PROGRAM WORK?
Once you sign up with APP, we will automatically deduct your mortgage payment from your checking or savings account each month. We will send notification to your bank to transfer the exact amount of your mortgage payment on the date you choose in the form below, from your checking or savings account to us. You will receive information about the transaction each month on your regular bank statement.

## WHAT ARE THE ADVANTAGES?
Convenience. You will no longer have to write a check each month for your mortgage payment. No Checks. No stamps. No envelopes. No trips to the mail box. APP will save you time and money.
Security. You'll have peace of mind knowing that your monthly mortgage payment was made automatically and on time. You won't have to worry about forgetting to mail your check.

## APP IS FREE AND EASY
There is absolutely no charge for our APP service. We offer it to our customers because it assures prompt and accurate mortgage payments. It is simply more convenient for you and us.

## CAN I STILL MAKE ADDITIONAL PRINCIPAL PAYMENTS OR ESCROW DEPOSITS?
Yes! If you want to make additional payments, either designate below the amount of the principal curtailment to be withdrawn in addition to your monthly payment, or simply mail a check for the desired amount the first week of the month. Additional escrow can be mailed anytime. Please include your mortgage account number and the words "additional principal" or "escrow deposit" on the face of your check.

## HOW CAN I BEGIN THIS CONVENIENT SERVICE?
It's very simple. Just fill out the authorization agreement and return it to us. Please enclose a voided blank check or savings account deposit slip with the authorization agreement. (Simply write "void" across the face of your check) or a savings deposit slip from a current savings account. The authorization agreement and your voided check or savings deposit slip will give us the accurate information we need to begin your APP service and start saving you time and postage.

We will notify you in writing which month's payment will begin your APP service. Usually, processing takes about 45 days. However, please continue to make your normal mortgage payments, UNTIL YOU ARE NOTIFIED BY MGC MORTGAGE, INC. WITH A CONFIRMATION LETTER.

If you have any questions, please call us toll free at 1-877-471-7888. One of our Customer Service Representatives will be happy to answer your questions or provide you with more information.

Fill out and return the APP authorization agreement today. You'll have one less thing to worry about month to month.

## CAN I CANCEL THE APP SERVICE?
The APP service may be canceled by sending us a written notice 30 days prior to your next due date, to the address listed below.

## WHAT HAPPENS IF I CHANGE MY BANK?
If you move your checking or savings account from your current bank to another one, you need to complete a new authorization agreement and mail it to us along with a "voided" blank check or savings account deposit slip, prior to the 10th of the month. You can request an additional form by calling our Customer Service Department toll free at 1-877-471-7888. When we receive the new form and your "voided" check or savings account deposit slip, please allow 2 to 3 weeks for the change to take place. We will notify you when the APP service will begin on your new account.

---

RETAIN UPPER PORTION FOR YOUR RECORDS

**AUTHORIZATION AGREEMENT FOR MONTHLY AUTOMATIC PAYMENT**
**MGC MORTGAGE, INC., 1 CORPORATE DRIVE, SUITE 360, LAKE ZURICH, IL 60047-8945**

Mortgage Account Number_____

I (we) hereby authorize MGC Mortgage, Inc., and its successors, assigns, authorized agents or any entity servicing my loan on their behalf (hereinafter called THE LENDER) to initiate mortgage payment debit entries (which may vary from the amount indicated below with future changes in escrow, principal and interest components, as applicable) to my (our) Checking or Savings Account indicated below and the depository named below to debit the same to such account. I (we) understand that if any debit entries under this authorization are returned for insufficient funds or otherwise dishonored, I (we) will promptly send THE LENDER the total monthly payment due, plus any late charge(s) or other fees due under my mortgage.
DEPOSITORY INSTITUTION
NAME _____        DATE OF WITHDRAWAL___ 0 ___ 1 ___ 2 ___ 3 ___ 4 ___ 5 DAYS AFTER
CITY _____        PAYMENT DATE.
ACCOUNT NO. _____        DAY PHONE _____ EVENING PHONE _____
BANK PHONE NO. _____        STATE _____ ZIP _____
CHECKING: _____ SAVINGS: _____        TRANSIT NUMBER

This authorization is to remain in full force and effect until THE LENDER has received written notification from me (us) of its termination in such time and in such manner as to afford THE LENDER a reasonable opportunity to act upon it. THE LENDER may terminate this agreement at anytime, with written notice sent to me.

NAME (S) _____              PAYMENT AMOUNT        $_____
                    **(PLEASE PRINT)**                 ADDITIONAL PRINCIPAL IF ANY  $_____
                                                       FOR EACH MONTH
DATE _____ SIGNED X _____              SIGNED X _____

Exhibit 4

## AUTOMATIC PAYMENT PROGRAM ("APP"). RETAIN FOR YOUR RECORDS

**Do you want to save time and postage every month? Explore MGC Mortgage, Inc.'s Free Automatic Payment Program (APP).**

### HOW DOES THE PROGRAM WORK?
Once you sign up with APP, we will automatically deduct your mortgage payment from your checking or savings account each month. We will send notification to your bank to transfer the exact amount of your mortgage payment on the date you choose in the form below, from your checking or savings account to us. You will receive information about the transaction each month on your regular bank statement.

### WHAT ARE THE ADVANTAGES?
Convenience. You will no longer have to write a check each month for your mortgage payment. No Checks. No stamps. No envelopes. No trips to the mail box. APP will save you time and money.
Security. You'll have peace of mind knowing that your monthly mortgage payment was made automatically and on time. You won't have to worry about forgetting to mail your check.

### APP IS FREE AND EASY
There is absolutely no charge for our APP service. We offer it to our customers because it assures prompt and accurate mortgage payments. It is simply more convenient for you and us.

### CAN I STILL MAKE ADDITIONAL PRINCIPAL PAYMENTS OR ESCROW DEPOSITS?
Yes! If you want to make additional payments, either designate below the amount of the principal curtailment to be withdrawn in addition to your monthly payment, or simply mail a check for the desired amount the first week of the month. Additional escrow can be mailed anytime. Please include your mortgage account number and the words "additional principal" or "escrow deposit" on the face of your check.

### HOW CAN I BEGIN THIS CONVENIENT SERVICE?
It's very simple. Just fill out the authorization agreement and return it to us. Please enclose a voided blank check or savings account deposit slip with the authorization agreement. (Simply write "void" across the face of your check) or a savings deposit slip from a current savings account. The authorization agreement and your voided check or savings deposit slip will give us the accurate information we need to begin your APP service and start saving you time and postage.

We will notify you in writing which month's payment will begin your APP service. Usually, processing takes about 45 days. However, please continue to make your normal mortgage payments, UNTIL YOU ARE NOTIFIED BY MGC MORTGAGE, INC. WITH A CONFIRMATION LETTER.

If you have any questions, please call us toll free at 1-877-471-7888. One of our Customer Service Representatives will be happy to answer your questions or provide you with more information.

Fill out and return the APP authorization agreement today. You'll have one less thing to worry about month to month.

### CAN I CANCEL THE APP SERVICE?
The APP service may be canceled by sending us a written notice 30 days prior to your next due date, to the address listed below.

### WHAT HAPPENS IF I CHANGE MY BANK?
If you move your checking or savings account from your current bank to another one, you need to complete a new authorization agreement and mail it to us along with a "voided" blank check or savings account deposit slip, prior to the 10th of the month. You can request an additional form by calling our Customer Service Department toll free at 1-877-471-7888. When we receive the new form and your "voided" check or savings account deposit slip, please allow 2 to 3 weeks for the change to take place. We will notify you when the APP service will begin on your new account.

---

RETAIN UPPER PORTION FOR YOUR RECORDS

**AUTHORIZATION AGREEMENT FOR MONTHLY AUTOMATIC PAYMENT**
**MGC MORTGAGE, INC., 1 CORPORATE DRIVE, SUITE 360, LAKE ZURICH, IL 60047-8945**

Mortgage Account Number_____

I (we) hereby authorize MGC Mortgage, Inc., and its successors, assigns, authorized agents or any entity servicing my loan on their behalf (hereinafter called THE LENDER) to initiate mortgage payment debit entries (which may vary from the amount indicated below with future changes in escrow, principal and interest components, as applicable) to my (our) Checking or Savings Account indicated below and the depository named below to debit the same to such account. I (we) understand that if any debit entries under this authorization are returned for insufficient funds or otherwise dishonored, I (we) will promptly send THE LENDER the total monthly payment due, plus any late charge(s) or other fees due under my mortgage.
DEPOSITORY INSTITUTION

NAME _____
CITY _____
ACCOUNT NO. _____
BANK PHONE NO. _____
CHECKING: _____ SAVINGS: _____

DATE OF WITHDRAWAL___0 ___ 1 ___ 2 ___ 3 ___ 4 ___ 5 DAYS AFTER
PAYMENT DATE.
DAY PHONE _____ EVENING PHONE _____
STATE _____ ZIP _____
TRANSIT NUMBER

This authorization is to remain in full force and effect until THE LENDER has received written notification from me (us) of its termination in such time and in such manner as to afford THE LENDER a reasonable opportunity to act upon it. THE LENDER may terminate this agreement at anytime, with written notice sent to me.

NAME (S) _____
(PLEASE PRINT)

PAYMENT AMOUNT         $_____
ADDITIONAL PRINCIPAL IF ANY   $_____
FOR EACH MONTH

DATE _____ SIGNED X _____

SIGNED X _____

Exhibit 4

# Exhibit 5

## Notice to Cease and Desist Conditional

Klara Gianna Gallusz
c/o 3639 Midway Drive 408
San Diego, California near [92110]

MGC MORTGAGE INC.
1 CORPORATE DRIVE, SUITE 360
LAKE ZURICH IL 60047-8945

Re: Account No. ▮▮▮▮▮▮

### Notice to Agent is notice to Principle and Notice to principle is Notice to Agent

### *Pursuant to 15 U.S.C.1692c. Communication in connection with debt collection*

Except for communication regarding my consumer right to a written remedy sent via mail to the Notary address herein, I, Klara Gianna Gallusz, hereby provide written notice in compliance with *15 U.S.C. 1692c* that there is an error in the payment of this purported debt and that I demand that you cease all forms of communication with me through any and all means in an attempt to collect a fraudulent debt unless it pertains to remedying the billing error.
### *(c)CEASING COMMUNICATION*

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—

> (1) to advise the consumer that the debt collector's further efforts are being terminated;
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

Whereas MGC MORTGAGE, INC. has refused to provide the Claimant with the original promissory note and/or original contract and has only furnished a copy of an installment agreement, the Claimant hereby suspects fraudulent activity in the original contract that initiated the Bank's security interest (installment agreement).

I, as a Federally protected consumer and alleged debtor, hereby invoke my right to a specified remedy as a consumer and demand the following:

### *15 U.S. Code 1666d /12 CFR 1026.21Treatment of credit balances*
Whenever a credit balance in excess of $1 is created in connection with a consumer credit transaction through (1) transmittal of funds to a creditor in excess of the total balance due on an account, (2) rebates of unearned finance charges or insurance premiums, or (3) amounts otherwise owed to or held for the benefit of an obligor, the creditor shall—

> (A) credit the amount of the credit balance to the consumer's account.
> (B) refund any part of the amount of the remaining credit balance, upon request of the consumer; and
> (C) make a good faith effort to refund to the consumer by cash, check, or money order any part of the amount of the credit balance remaining in the account for more than six months, except that no further

Notice to Cease and Desist Conditional

Exhibit 5

Page 51 of 879

action is required in any case in which the consumer's current location is not known by the creditor and cannot be traced through the consumer's last known address or telephone number.

The Claimant demands that MGC MORTGAGE, INC. credit the amount of the credit balance to the consumer's account without undue delay. It is alleged that MGC MORTGAGE, INC. deliberately concealed and/or neglected to disclose that the consumer was due a credit balance of over $1 in relation to this transaction.

The Claimant demands that this institution refund all parts of the remaining credit balance, upon the request of the consumer, without any exceptions.

### 12 CFR § 1026.13 billing error resolution

The Claimant demands that MGC MORTGAGE, INC. rectify the billing error, and credit the account of the consumer with any disputed amount, along with any applicable finance or other charges.

I hereby demand that all future coupon payments for the account in question be sent directly to my place of abode, as listed on the account, in the form of a check, starting from the date the account was opened to cover all current and future payments. A correction notice must be mailed or delivered to the Consumer/Claimant.

NOTICE OF ACKNOWLEDGMENT Pursuant to _UCC 1-202f Notice; Knowledge_. You are hereby notified that upon the receipt of the documents herein and of this notice, acknowledgement has been made.

By: _Klara Gianna Gallusz ©_
Authorized Representative All Rights Reserved


ACKNOWLEDGEMENT

STATE OF CALIFORNIA          )
                             )    ss.
SAN DIEGO COUNTY             )

Before Me, on this _____ day of _____, 2023 Anno Domini, Gallusz, Klara, Gianna, personally known to me (or proved to me on the basis of satisfactory evidence) to be the natural woman described herein, whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on this instrument executed the instrument. Purpose of Notary Public is for identification only, and not for entrance into any foreign jurisdiction

**Certificate Attached for**
**California Notary Wording**

Exhibit 5

Page 52 of 879

## CALIFORNIA JURAT
### (CALIFORNIA GOVERNMENT CODE § 8202)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    )
COUNTY OF _____ San Diego _____ )

Subscribed and sworn to (or affirmed) before me on this __5__ day of __Octbober__, 20 _23_

by _____Klara Gianna Gallusz_____, proved to me on the basis of
                    *(Name of Signer(s))*

satisfactory evidence to be the person(s) who appeared before me.


_Michelle A. Bonnet - NOTARY PUBLIC_

Signature of Notary Public                              (Notary Seal)

MICHELLE A. BONNET
Notary Public - California
San Diego County
Commission # 2456249
My Comm. Expires Jul 31, 2027

_____ADDITIONAL OPTIONAL INFORMATION_____

**Description of Attached Document**

Title or Type of Document: _Notice to Cease and Desist Conditional_ Document Date: _October 5,2023_

Number of Pages: __3__ Signer(s) Other Than Named Above: _____

Additional Information: _____

revision date 01/01/2015

Exhibit 5

Page 53 of 879

## New York State Department of State

## Uniform Commercial Code

### Filing Data Report

Please note that this record report has been generated by an independent searcher, using the Department of State's Uniform Commercial Code On-Line Database. This report lists filing records on file as of September 25, 2023, 11:59 PM. However, the information contained in this report is NOT an official record of the Department of State and may contain filings filed after this date.

| 1. Debtors: | MGC MORTGAGE, INC. DOVENMUEHLE | | 1 CORPORATE DRIVE, SUITE 360, LAKE ZURICH, IL 60047, USA | | |
|---|---|---|---|---|---|
| Secured Party Names: | GALLUSZ, KLARA GIANNA | | 3639 MIDWAY DRIVE 408, SAN DIEGO, CA 92110, USA | | |
| | MGC MORTGAGE, INC. DOVENMUEHLE | | 1 CORPORATE DRIVE, SUITE 360, LAKE ZURICH, IL 60047-8945, USA | | |
| **File no.** | **File Date** | **Lapse Date** | **Filing Type** | **Pages** | **Image** |
| 202309288465503 | 09/28/2023 | 09/28/2028 | Financing Statement | 2 | NA * |
| 202310028470109 | 10/02/2023 | 09/28/2028 | Assignment | 1 | NA * |

Back

\* Images marked NA are not available on this webpage.

[ Division of Corporations, State Records and UCC Home Page ] [ NYS Department of State Home Page ]

0443487        2023 Sep 28 PM07:47

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Gallusz, Klara Gianna
3639 Midway Drive 408
San Diego, CA 92110, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | MGC MORTGAGE, INC. DOVENMUEHLE | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS 1 CORPORATE DRIVE, SUITE 360 | CITY LAKE ZURICH | STATE IL | POSTAL CODE 60047 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION TRUST | 1f. JURISDICTION OF ORGANIZATION HELD IN TRUST | 1g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME Gallusz | FIRST NAME Klara | MIDDLE NAME Gianna | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS 3639 Midway Drive 408 | CITY San Diego | STATE CA | POSTAL CODE 92110 | COUNTRY USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
MGC MORTGAGE, INC.
PROPERTY ADDRESS: 3050 Rue D'Orleans 410
San Diego Ca 92110
LOAN NUMBER: ▮▮▮▮ - Original Loan Amount $192,500 x 3 = $577,550 - Five Hundred Seventy-Seven Thousand Five Hundred Fifty Dollars

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-202309288465503

Exhibit 5

Page 55 of 879

0443487          2023 Sep 28 PM07:47

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME MGC MORTGAGE, INC. DOVENMUEHLE

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| | | |

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

14. Description of real estate:

16. Additional collateral description:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☒ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY— NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

Exhibit 5

Page 56 of 879

**0443905**    **2023 Oct 02 PM09:15**

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Gallusz, Klara Gianna
3639 Midway Drive 408
San Diego, Ca 921105254, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE #   202309288465503 Filedate: 28-SEP-23 | 1b.  ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

| 2. | ☐ | TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement. |
| 3. | ☐ | CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law. |
| 4. | ☒ | ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9. |

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME   MGC MORTGAGE, INC. DOVENMUEHLE | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS  1 CORPORATE DRIVE, SUITE 360 | CITY  LAKE ZURICH | STATE  IL | POSTAL CODE  60047-8945 | COUNTRY  USA |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION  TRUST | 7f. JURISDICTION OF ORGANIZATION  HELD IN TRUST | 7g. ORGANIZATIONAL ID #, if any   ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☒ assigned.

MGC MORTGAGE, INC.
PROPERTY ADDRESS: 3050 Rue D'Orleans 410
San Diego, Ca 92110
LOAN NUMBER: ▪▪▪▪▪▪▪ Original Loan Amount $192,500 x 3 = $577,550 - Five Hundred Seventy-Seven Thousand Five Hundred Fifty Dollars

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S LAST NAME  GALLUSZ | FIRST NAME  KLARA | MIDDLE NAME  GIANNA | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

## Filing Number-202310028470109

Exhibit 5

Page 57 of 879

# Exhibit 6



Mortgage Servicing
1 Corporate Drive, Suite 360
Lake Zurich, IL 60047-8945
www.mgcmortgage.com
Customer Service 1-877-471-7888

October 12, 2023

Klara Gianna Gallusz
3639 Midway Dr #408
San Diego CA 92110

Re: Loan Number:     ████████

Property Address:     3050 Rue d' Orleans
                      San Diego CA 92110

Dear Klara Gianna Gallusz:

Thank you for the opportunity to respond to the concerns you recently submitted addressed to William Mynatt Jr, which we received on October 11, 2023. In your correspondence, you referenced 15 USC 1692c and requested we cease communication with you related to debt collection. You also stated that we have refused to provide you with the original Promissory Note and original contract and suspect fraudulent activity that initiated the security interest. You also referenced 15 USC 1666d and 12 CFR 1026.21, related to the treatment of credit balances on your account, and requested that we credit the amount of the credit balance to your account. In addition, you referenced 12 CFR 1026.13, related to a billing error you assert has occurred, and request that we rectify this billing error and credit your account with any disputed amount. Finally, you requested that all future coupon payments be sent directly to you in the form of a check, starting from the date the account was opened to cover all current and future payments. We have reviewed your concerns, and our response is indicated below.

Pursuant to your request, we have taken the appropriate steps to ensure that no further collection calls will be placed to you.

Regarding your requests related to 15 USC 1666d and 12 CFR 1026.21, please note that these are related to the remaining credit balance in excess of the total balance due. As your loan has not been paid in full, there is currently no credit balance to return to you.

As of the date of this correspondence, our office has been unable to determine the above-referenced accounting error. If this billing error is due to your loan not being paid in full, please be advised that our office has not received a legal tender, which could be used to pay the loan in full. Please note that all payoff funds must be submitted via certified funds. As no legal tender has been received to pay this loan in full, the mortgage remains outstanding and accrues interest daily.

Exhibit 6

Page 59 of 879

Page 2 of 2
October 12, 2023
Re: Loan Number: ███████

Please know that the documents you submitted are not sufficient proof of payment. Additionally, payment coupon attached to your monthly Mortgage Statement is not legal tender and is not sufficient proof of payment without payment via check, money order, cashier's check, or certified funds; you are still liable to continue to make your monthly payments until we receive payment in full for your loan. You are required to make your monthly payments as agreed in the Note and Terms of Agreement in your closing documents. Failure to continue to make payments will result in adverse credit reporting, the accumulation of late fees, and potential Foreclosure action. We have included your loan documents as verification of debt for your review.

We believe that this response fully addresses the concerns outlined in your correspondence. You have a right to request any documentation we relied upon in developing our response to your concerns in addition to any documentation already enclosed with this response. If you have any questions concerning this response or require additional assistance, please contact our Customer Service Department at 1-877-471-7888, Monday through Friday, from 8:00 a.m. to 5:00 p.m. Central Standard Time (CST).

Sincerely,

*Stephen F.*

Stephen F.
Escalations Resolution Specialist
Research Department

Exhibit 6



# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**
SEE "ADDENDUM TO ARM RIDER" ATTACHED HERETO AND MADE A PART HEREOF.
SEE "INTEREST-ONLY ADDENDUM TO ARM RIDER" ATTACHED HERETO AND MADE A PART HEREOF.
LOAN NO.:

THIS ADJUSTABLE RATE RIDER is made this  14th  day of      DECEMBER, 2005     ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to AMERICAN MORTGAGE EXPRESS FINANCIAL

("Lender") of the same date and covering the property described in the Security Instrument and located at:

3050 RUE D'ORLEANS # 410, SAN DIEGO, CA  92110
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of      6.500      %. The Note provides for changes in the interest rate and the monthly payments, as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first day of      JANUARY, 2011      ,
and on that day every      6th      month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in <u>The Wall Street Journal</u>. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

Initials:

Form 3138 1/01

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN <u>THE WALL STREET JOURNAL</u>) - Single Family - Fannie Mae Uniform Instrument
VMP-838R (0402)          Page 1 of 4          LENDER SUPPORT SYSTEMS INC. 838R.NEW (07/04)

Exhibit 6



If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE QUARTER                    percentage points
(    2.250    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at  the first Change Date will not be greater than    12.500    % or less than    2.260    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000THS                    percentage points
(    2.000    %) from the rate of interest I have been paying for the preceding    6    months. My interest rate will never be greater than  12.500  % .

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

VMP-838R (0402)                    Page 2 of 4                    Form 3138 1/01

Exhibit 6

Page 62 of 879



If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

VMP-838R (0402)                    Page 3 of 4                    Form 3138 1/01

Exhibit 6

Page 63 of 879

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)                      _____ (Seal)
KLARA GIANNA GALLUSZ        -Borrower                                          -Borrower

_____ (Seal)                      _____ (Seal)
                            -Borrower                                          -Borrower

_____ (Seal)                      _____ (Seal)
                            -Borrower                                          -Borrower

_____ (Seal)                      _____ (Seal)
                            -Borrower                                          -Borrower

VMP-838R (0402)                    Page 4 of 4                    Form 3138 1/01

Exhibit 6

Page 64 of 879

**20484**

5804687-11

Recording requested by:
CHICAGO TITLE COMPANY

Recording Requested By:
AMERICAN MORTGAGE EXPRESS FINANCIAL

Return To:
AMERICAN MORTGAGE EXPRESS FINANCIAL

10251 VISTA SORRENTO PARKWAY, SUITE 300
SAN DIEGO, CA 92121

Prepared By:

APN: 441-090-39-63

DOC# 2005-1098367

DEC 22, 2005    4:19 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:        90.00
PAGES:        28        DA:        1

2005-1098367

009500161    GALLUSZ    KG

610    116772669    D2    001    002

[Space Above This Line For Recording]

## DEED OF TRUST

LOAN NO.: ▮▮▮▮▮
ESCROW NO.: ▮▮▮▮▮

MIN ▮▮▮▮▮
MERS Phone: ▮▮▮▮▮

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated        DECEMBER 14, 2005
together with all Riders to this document.
(B) "Borrower" is
KLARA GIANNA GALLUSZ, A SINGLE WOMAN

Borrower's address is 3050 RUE D ORLEANS # 410, SAN DIEGO, CA 92110
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
AMERICAN MORTGAGE EXPRESS FINANCIAL

Lender is a  CORPORATION
organized and existing under the laws of  CALIFORNIA

Initials: KG

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01
VMP-6A(CA) (0207)        Page 1 of 15        LENDER SUPPORT SYSTEMS, INC MERS6ACA.NEW (05/04)

Exhibit 6

Page 65 of 879

20485

Lender's address is
10251 VISTA SORRENTO PARKWAY, SUITE 300, SAN DIEGO, CA 92121

(D) "Trustee" is
CHICAGO TITLE INSURANCE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated          DECEMBER 14, 2005
The Note states that Borrower owes Lender

ONE HUNDRED NINETY TWO THOUSAND FIVE HUNDRED AND NO/100 X X X X X X X X X X X X X X X
                                                                                    Dollars
(U.S. $ 192,500.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    JANUARY 01, 2036

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "RIDERS" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| [XX] Adjustable Rate Rider | [XX] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |

[XX] Other(s) [specify] INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
                          ADDENDUM TO ADJUSTABLE RATE RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: KG

VMP-6A(CA) (0207)                        Page 2 of 15                        Form 3005 1/01

Exhibit 6

Page 66 of 879

20486

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                         of                    SAN DIEGO                    :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 441-090-39-63                         which currently has the address of
                    3050 RUE D'ORLEANS # 410                              [Street]
          SAN DIEGO                    [City] , California      92110      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

VMP-6A(CA) (0207)                         Page 3 of 15                    Initials: KC
                                                                    Form 3005 1/01

Exhibit 6
Page 67 of 879

20487

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payment is insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: _KC_

Form 3005 1/01

Exhibit 6

Page 68 of 879

20488

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to he paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

VMP-6A(CA) (0207)                          Page 5 of 15                          Initials: [initials]  Form 3005 1/01

Exhibit 6

Page 69 of 879

20489

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

VMP-6A(CA) (0207)                          Page 6 of 15                          Initials: KQ

Form 3005 1/01

Exhibit 6

Page 70 of 879

20490

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

VMP-6A(CA) (0207)                    Page 7 of 15                    Initials: ___
Form 3005 1/01

Exhibit 6

Page 71 of 879

20491

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

VMP-6A(CA) (0207)                Page 8 of 15                Initials: ___   Form 3005 1/01

Exhibit 6

Page 72 of 879

20492

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

VMP-8A(CA) (0207)                    Page 9 of 15                    Initials: ___  Form 3005 1/01

Exhibit 6

Page 73 of 879

20493

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

VMP-6A(CA) (0207)                              Page 10 of 16                                          Initials: ___  Form 3005 1/01

Exhibit 6

Page 74 of 879

20494

16. .Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: _KR_

VMP-6A(CA) (0207)                 Page 11 of 15                 Form 3005 1/01

Exhibit 6

Page 75 of 879

20495

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Exhibit 6

Page 76 of 879

20496

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

VMP-6A(CA) (0207)                    Page 13 of 15                    Initials: KC    Form 3005  1/01

Exhibit 6

Page 77 of 879

20497

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
-Witness

_____
-Witness

_____(Seal)     _____(Seal)
KLARA GIANNA GALLUSZ           -Borrower                                    -Borrower

_____(Seal)     _____(Seal)
                               -Borrower                                    -Borrower

_____(Seal)     _____(Seal)
                               -Borrower                                    -Borrower

_____(Seal)     _____(Seal)
                               -Borrower                                    -Borrower

VMP-6A(CA) (0207)                Page 14 of 15                Form 3005  1/01

Exhibit 6

Page 78 of 879

20498

State of CALIFORNIA
County of SAN DIEGO                    } ss.

On DECEMBER 14, 2005    before me,    Claudette Vera Cruz
                                              personally appeared

KLARA GIANNA GALLUSZ

                                              , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                                                        (Seal)

CLAUDETTE VERA CRUZ
Commission # 1502632
Notary Public - California
San Diego County
My Comm. Expires Jul 30, 2008

VMP-6A(CA) (0207)                Page 15 of 15              Initials: KG
                                                           Form 3005 1/01

Exhibit 6

Page 79 of 879

12/28/2005 23:44 FAX         ☑002/005

OMB No. ▓▓▓▓

Page 1

**A.**

**CHICAGO TITLE COMPANY**
CLOSER: Erika Chavez
DATE OF PRINTING: 12/27/05
TIME OF PRINTING: 10:18

**SETTLEMENT STATEMENT**
**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

**B. TYPE OF LOAN**

| | | |
|---|---|---|
| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ CONV. UNINS. |
| 4. ☐ VA | 5. ☐ CONV. INS. | |
| 6. File Number ▓▓▓▓▓▓ | | P11 |
| 7. Loan Number ▓▓▓▓ | | A23 |
| 8. Mortgage Insurance Case Number | | |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME OF BORROWER:** Klara Gianna Galluzz
**ADDRESS:** 3050 Rue D'Orleans #410
San Diego     CALIFORNIA     92110

**E. NAME OF SELLER:**
**ADDRESS:**

**F. NAME OF LENDER:** American Mortgage Express
**ADDRESS:** 10251 Vista Sorrento Parkway
San Diego     CALIFORNIA     92121

**G. PROPERTY LOCATION:** 3050 Rue D'Orleans #410
San Diego     CALIFORNIA     92110

**H. SETTLEMENT AGENT:** CHICAGO TITLE COMPANY
**ADDRESS:** 740 LOMAS SANTA FE DRIVE
SOLANA BEACH     CALIFORNIA     92075
**PLACE OF SETTLEMENT:** 740 LOMAS SANTA FE DRIVE
**ADDRESS:** SOLANA BEACH     CALIFORNIA     92075

**I. SETTLEMENT DATE:** December 22, 2005

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 4,935.09 | 403. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | |
| 104. County pd 1ds | 129,512.80 | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes   to | | 406. City/town taxes   to | |
| 107. County taxes   to | | 407. County taxes   to | |
| 108. Assessments   to | | 408. Assessments   to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMT DUE FROM BORROWER** | 134,448.89 | **420. GROSS AMT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 192,500.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes   to | | 510. City/town taxes   to | |
| 211. County taxes   to | | 511. County taxes   to | |
| 212. Assessments   to | | 512. Assessments   to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 192,500.00 | **520. TOTAL REDUCTIONS AMT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amt due from borrower (line 120) | 134,448.86 | 601. Gross amt due to seller (line 420) | |
| 302. Less amts paid by/for borrower (line 220) | ( 192,500.00) | 602. Less reductions in amt due seller (line 520) | ( ) |
| **303. CASH (☐ FROM) (☒ TO) BORROWER** | 58,051.11 | **603. CASH (☐ TO) ( ☐ FROM) SELLER** | |

THIS IS CERTIFIED TO BE A TRUE AND
ACCURATE COPY OF THE ORIGINAL DOCUMENT.

By _Erika Chavez_
ERIKA CHAVEZ

N08                          HUD-1 (3/86) RESPA, HB 4305.2

Exhibit 6

Page 80 of 879

12/28/2005 23:44 FAX               ☎ 003/005

F-2857-01 4/80                         Page 2            OMB No. ▮

| ORD#/ABS# ▮    P11 | | L. SETTLEMENT CHARGES | TIME OF PRINTING: 10:18 | |
|---|---|---|---|---|
| ESC# ▮    NOB   823 | | | DATE OF PRINTING: 12/27/05 | |
| 700. TOTAL SALES/BROKER'S COMMISSION based on price | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
| $    @    % | | | | |
| Division of Commission (line 700) as follows: | | | | |
| 701. LD: | $ | to | | |
| 702. SB: | $ | to | | |
| 703. Commission paid at Settlement | | | | |
| (Money retained by broker applied to commission $    ) | | | | |
| 704. Other sales agent charges: | | | | |
| 705. Additional commission: | $ | to | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | |
| 801. Loan Origination Fee | % | | | |
| 802. Loan Discount | % | | | |
| 803. Appraisal Fee to | | | | |
| 804. Credit Report to | | | | |
| 805. Lender's Inspection Fee to | | | | |
| 806. Mortgage Insurance Application Fee to | | | | |
| 807. Assumption Fee to | | | | |
| 808. Processing fee | | | 595.00 | |
| 809. Underwriting fee | | | 350.00 | |
| 810. Document fee | | | 250.00 | |
| 811. Funding Fee | | | 175.00 | |
| 812. | | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | |
| 901. Interest from 12/22/05 to 01/01/06 @$ 34.7570 /day for 10 days | | | 347.57 | |
| 902. Mortgage Insurance Premium for   0.00   months to | | | | |
| 903. Hazard Insurance Premium for   0.00   years to | | | | |
| 904. | | | | |
| 905. | | | | |
| 1000. RESERVES DEPOSITED WITH LENDER | | | | |
| 1001. Hazard Insurance   0.00 month @$   per month | | | | |
| 1002. Mortgage Insurance   0.00 month @$   per month | | | | |
| 1003. City property taxes   0.00 month @$   per month | | | | |
| 1004. County property taxes   5.00 month @$   255.40 per month | | | 1,277.00 | ✓ |
| 1005. Annual assessments   0.00 month @$   per month | | | | |
| 1006.   0.00 month @$   per month | | | | |
| 1007.   0.00 month @$   per month | | | | |
| 1008. Aggregate Accounting Adjustment | | | 0.00 | |
| 1100. TITLE CHARGES | | | | |
| 1101. Settlement or Closing Fee   to CHICAGO TITLE COMPANY | | | 425.00 | |
| 1102. Abstract or title search   to | | | | |
| 1103. Title examination   to | | | | |
| 1104. Title insurance binder   to | | | | |
| 1105. Document preparation | | | | |
| 1106. Notary fees   to Claudette Vera Cruz | | | 75.00 | |
| 1107. Attorney's fee   to | | | | |
| 1108. Title insurance   to CHICAGO TITLE COMPANY | | | 450.00 | |
| (includes above items numbers) | | | | |
| 1109. Lender's coverage $182,600.00   $   450.00 | | | ▩▩▩ | ▩▩▩ |
| 1110. Owner's coverage $0.00   $ | | | ▩▩▩ | ▩▩▩ |
| 1111. | | | | |
| 1112. Delivery/Messenger fee | | | 15.86 | |
| 1113. Endorsements | | | 139.00 | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | |
| 1201. Recording fees: Deed $   10.00 ; Mortgage $   90.00 ; Release $ | | | 100.00 | |
| 1202. City/county tax/stamps:   Deed $   ; Mortgage $ | | | | |
| 1203. State tax/stamps:   Deed $   ; Mortgage $ | | | | |
| 1204. 2nd Installment Supplemental Taxes | | | 109.85 | |
| 1205. 2nd Installment Supplemental Taxes | | | 626.81 | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | | |
| 1301. Survey   to | | | | |
| 1302. Pest Inspection   to | | | | |
| 1303. | | | | |
| 1304. | | | | |
| 1305. | | | | |
| 1306. | | | | |
| 1307. | | | | |
| 1400. TOTAL SETTLEMENT CHARGES   (enter on lines 103, Section J and 502, Section K) | | | 4,936.09 | |

M09                                           HUD-1 (3/86) RESPA, RB 4305.2

Exhibit 6

Page 81 of 879

☑004/005



OMB No. ▮▮▮▮  Page 8

| ORD#/ABS# ▮▮▮▮ ESC# | P11 N08 823 | SUPPLEMENTAL PAGE | TIME OF PRINTING: 10:18 DATE OF PRINTING: 12/27/05 |
|---|---|---|---|

Countrywide

| | | | CHARGE AMOUNT |
|---|---|---|---|
| 104.001 | PRINCIPAL | 128,921.32 | |
| | INTEREST | 477.48 | |
| | MORTGAGE CHARGES/FEES | 114.00 | |
| | TOTAL PAYOFF TO Countrywide | | 129,512.80 |

TOTAL Countrywide (LINE 104)          $          129,512.80

N05                                                      HUD-1 (3/86) RESPA, HB 4305.2

Exhibit 6
Page 82 of 879

# A D D E N D U M
## T O
## HUD-1 — RESPA

---

File Number: ▓▓▓▓▓▓▓    N08

Loan Number: ▓▓▓▓▓▓

The items indicated by "P.O.C." on this Settlement Statement have been included at
the direction of the lender for disclosure purposes only. The settlement agent has no
direct information concerning these expenditures, other than what has been
provided by the lender, nor any obligation to authenticate "P.O.C." charges. No
representation is made by the settlement agent regarding the validity or accuracy
thereof.

ADDEN-8/93-tro

Exhibit 6

Page 83 of 879

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE PROMISSORY NOTE

MIN: ▮▮▮▮▮▮▮▮
MERS Phone: 1-888-679-6377

LOAN NUMBER: ▮▮▮▮▮▮

PROPERTY ADDRESS: 3050 RUE D'ORLEANS # 410, SAN DIEGO, CA 92110

THIS ADDENDUM is made this 14th day of DECEMBER, 2005 , and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to
AMERICAN MORTGAGE EXPRESS FINANCIAL

(the "Lender").

THIS ADDENDUM supersedes Section 3(A), 3(B), 4(C) AND 7(A) of the Note. None of the other provisions of the Note are changed by this Addendum.

3.    PAYMENTS

   (A)    Time and Place of Payments

       I will pay interest by making payments every month for the first 120 payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues. I will pay principal and interest by making payments every month thereafter for the next 240 payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

       I will make my monthly payments on the 1st day of each month beginning on FEBRUARY, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on JANUARY 01, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

       I will make my payments at
10251 VISTA SORRENTO PARKWAY, SUITE 300, SAN DIEGO, CA 92121
or at a different place if required by the Note Holder.

*This is certified to be a true and exact copy of the original*

*MB*

   (B)    Amount of My Initial Monthly Payments

       My initial monthly payments will be in the amount of U.S. $ 1,042.71 . This payment amount is based on the original principal balance of the Note. This payment amount may change.

Form 603E          Page 1 of 2          LENDER SUPPORT SYSTEMS INC. AURIONTE.ADD (08/04)          Initials: _KS_

Exhibit 6

Page 84 of 879

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

    (C)    Calculation of Changes

        Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE QUARTER percentage point(s) ( 2.250 %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

        During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment will not be reduced due to voluntary prepayments.

7.    BORROWER'S FAILURE TO PAY AS REQUIRED

    (A)    Late Charge for Overdue Payments

        If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of interest for the first 120 payments, 5.00 % of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

_____ (Seal)    _____ (Seal)
KLARA GIANNA GALLUSZ            -Borrower                            -Borrower


_____ (Seal)    _____ (Seal)
                               -Borrower                            -Borrower

This is certified to be a true
and exact copy of the original

_____ (Seal)    _____ (Seal)
                               -Borrower                            -Borrower


_____ (Seal)    _____ (Seal)
                               -Borrower                            -Borrower


Form 603E                              Page 2 of 2

Exhibit 6

Page 85 of 879

SEE "INTEREST-ONLY ADD. TO ARM NOTE" ATTACHED HERETO AND MADE A PART HEREOF.
SEE "ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

MIN
MERS Phone: 1-888-679-6377

# ADJUSTABLE RATE NOTE

LOAN NO.:

(LIBOR Six-Month Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| DECEMBER 14, 2005 | SOLANA BEACH | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

3050 RUE D'ORLEANS # 410, SAN DIEGO, CA 92110
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    192,500.00    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
AMERICAN MORTGAGE EXPRESS FINANCIAL

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.500    %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on    FEBRUARY, 2006    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    JANUARY 01, 2036    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at AMERICAN MORTGAGE EXPRESS FINANCIAL
10251 VISTA SORRENTO PARKWAY, SUITE 300, SAN DIEGO, CA 92121
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $    1,216.73    . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -
Single Family - Fannie Mae UNIFORM INSTRUMENT
Initials: KS
Form 3520 1/01

VMP-838N (0210)    Page 1 of 4    LENDER SUPPORT SYSTEMS INC. 838NXX.NEW (02/03)

Exhibit 6
Page 86 of 879

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of    JANUARY, 2011    , and on that day every 6th    month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding    TWO AND ONE QUARTER    percentage points (    2.250    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than    12.500    % or less than    2.250    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than    TWO AND 000/1000THS    percentage point(s) (    2.000    %) from the rate of interest I have been paying for the preceding    6    months. My interest rate will never be greater than    12.500    % .

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Initials:
Form 3520 1/01

Exhibit 6

Page 87 of 879

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
5.000          % of my overdue payment of principal and interest. I will pay this late charge promptly but
only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

VMP-836N (0210)          Page 3 of 4          Form 3520 1/01

Exhibit 6
Page 88 of 879



Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement; the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Klara Gianna Galluz_____ (Seal)            _____ (Seal)
KLARA GIANNA GALLUZ          -Borrower                                    -Borrower

_____ (Seal)            _____ (Seal)
                           -Borrower                                    -Borrower

_____ (Seal)            _____ (Seal)
                           -Borrower                                    -Borrower

_____ (Seal)            _____ (Seal)
                           -Borrower                                    -Borrower

*[Sign Original Only]*

VMP-838N (0210)                          Page 4 of 4                          Form 3520 1/01

Exhibit 6

Page 89 of 879

PAY TO THE ORDER OF  Countrywide Bank, N.A.

WITHOUT RECOURSE
AMERICAN MORTGAGE EXPRESS FINANCIAL
A CALIFORNIA CORPORATION
BY: _____
MARY ALMGREN, ASST. SECRETARY

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE BANK, N.A.
BY
MARIBEL LEDEZMA
COLLATERAL PROCESSING OFFICER

Exhibit 6

Page 90 of 879

12/29/2011 4:49:24 PM   PAGE   65/078

## ADDENDUM TO NOTE          LOAN NO.:

This addendum is made   DECEMBER 14, 2005   and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
3050 RUE D'ORLEANS # 410, SAN DIEGO, CA 92110

### AMENDED PROVISIONS

In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows:

### ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than   12.500   % or less than   2.250   %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than   TWO AND 000/1000THS   percentage point(s) (2.000 %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than   12.500   %. My interest rate will never be less than   2.250   %.

### UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Thereof, Trustor has executed this addendum.

_____
Witness

_Klara Ganna Sallys_   12-14-05
KLARA GANNA SALLYS2          (Date)                                    (Date)

_____          _____
(Date)                                    (Date)

1201 LIBOR Addendum to Note (01/01)          LENDER SUPPORT SYSTEMS, INC. AURA1201.AUR (06/05)

Exhibit 6

Page 91 of 879

## FEDERAL TRUTH - IN - LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Creditor:
AMERICAN MORTGAGE EXPRESS FINANCIAL

Borrower:
KLARA GIANNA GALLUSZ

10251 VISTA SORRENTO PARKWAY, SUITE 300
SAN DIEGO, CA 92121

3050 RUE D ORLEANS # 410
SAN DIEGO, CA  92110

Date:  DECEMBER 14, 2005

Loan Number: ▨▨▨▨▨

Check box if applicable:

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | [ ] Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit including your down-payment of $ N/A |
| 6.798 % | $ 289,381.67 | $ 189,437.53 | $ 478,819.20 | $ N/A |

[ ] REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit.

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 60 | 1,042.71 | 02/01/2006 | | | | | | |
| 60 | 1,082.81 | 02/01/2011 | | | | | | |
| 240 | 1,463.70 | 02/01/2016 | | | | | | |

THE PAYMENT SCHEDULE AND ANNUAL PERCENTAGE RATE DISCLOSED HERE ARE ESTIMATED ASSUMING THAT THE CURRENT INDEX RATE WILL NOT INCREASE NOR DECREASE THROUGHOUT THE LOAN TERM.

[ ] DEMAND FEATURE: This obligation has a demand feature.

[x] VARIABLE RATE: Your loan contains variable rate features.

    [ ] Information regarding the variable rate features of your loan have been provided to you earlier in a separate document.

    [x] Information regarding the variable rate features of your loan are provided hereinafter. The annual percentage rate may increase or decrease during the term of this transaction with increases or decreases in the value of the "Index" (or "Reference Rate"). The rate that you will pay may not be changed more often than every ___6th___ ___MONTH___ commencing ___01/01/2011___ .

        [x] Rate Change Limits: The rate may not increase by more than ___6.000___ % or decrease more than 6.000 % on the 1st change date. Then rate cannot increase or decrease more than 2.000 % semi-annually thereafter.

        [x] The rate will never be greater than ___12.500___ %

        [x] Any increase in the rate will result in a corresponding increase in the payment.

        [ ] Rate increases may occur without immediate and/or corresponding payment increases.

        [ ] Unpaid interest will be added to the principal.

    The "Index" (or "Reference Rate") is the:

THE AVERAGE OF INTERBANK OFFERED RATES FOR 6 MONTH(S) U.S. DOLLAR DEPOSITS IN THE LONDON MARKET ("LIBOR") BASED ON QUOTATIONS OF MAJOR BANKS, AS PUBLISHED IN THE WALL STREET JOURNAL.

INSURANCE: The following insurance is required to obtain credit:
[ ] Credit life insurance and credit disability     [x] Property insurance     [ ] Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor.
[ ] If you purchase [ ] property [ ] flood insurance from creditor you will pay $ ___ for one year term.

SECURITY: You are giving a security interest in:
3050 RUE D'ORLEANS # 410, SAN DIEGO, CA  92110

[ ] The goods or property being purchased     [x] Real property you already own.

FILING FEES: $ 75.00

LATE CHARGE: If a payment is more than 15 days late, you will be charged 5.00 % of the payment.

PREPAYMENT: If you pay off early, you
[ ] may     [x] will not     have to pay a penalty.
[ ] may     [x] will not     be entitled to a refund of part of the finance charge.

ASSUMPTION: Someone buying your property
[ ] may     [x] may, subject to conditions     [ ] may not     assume the remainder of your loan on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

[ ] e means an estimate     [ ] all dates and numerical disclosures except the late payment disclosures are estimates.

The undersigned acknowledge receiving and reading a completed copy of this disclosure.
Neither you nor the creditor previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.
[x] I/We have received the Variable Rate Disclosure for the loan program for which I/We have applied.

_Klara Gianna Gallusz_  12-14-05
KLARA GIANNA GALLUSZ          Date

_____  Date

_____  Date

_____  Date

LENDER SUPPORT SYSTEMS, INC. GEN-001.GEN (07/04)

Exhibit 6

Page 92 of 879

**"FEDERAL TRUTH - IN - LENDING DISCLOSURE STATEMENT" - PAGE 2**
**"ITEMIZATION OF AMOUNT FINANCED"**

Creditor:
AMERICAN MORTGAGE EXPRESS FINANCIAL

10251 VISTA SORRENTO PARKWAY, SUITE 300
SAN DIEGO, CA  92121

Re:
KLARA GIANNA GALLUSZ

3050 RUE D ORLEANS # 410
SAN DIEGO, CA  92110

Date:  DECEMBER 14, 2005
Initial Interest Rate:   6.500 %

Loan Number: ▓▓▓▓▓▓

Loan Amount: 192,500.00

| Ref HUD-1 Statement | | ** Amount Paid on your Account | *Broker = B    Other = O | | |
|---|---|---|---|---|---|
| | | | PAID | FINANCED | * |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | **Amount Paid To Others on your Behalf:** | | | | |
| 1004 | COUNTY PROPERTY TAXES 5 MONTHS @ $ 255.40 PER MO. | | $ | 1,277.00 | |
| 1108 | TITLE INSURANCE TO TITLE COMPANY | | $ | 450.00  E | O |
| 1201 | RECORDING FEE | | $ | 75.00  E | O |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| **LOAN PROCEEDS PAID TO:** | CHICAGO TITLE INSURANCE COMPANY | | $ | 187,635.53 | |
| | | **AMOUNT FINANCED** | $ | 189,437.53 | |
| | **Prepaid Finance Charge:** | | PAID | FINANCED | * |
| 810 | PROCESSING FEE TO AMERICAN MORTGAGE EXPRESS | | $ | 595.00 | |
| 1101 | SETTLEMENT OR CLOSING FEE TO SETTLEMENT/CLOSING AGENT | | $ | 615.00  E | O |
| 901 | INTEREST 31 DAYS @ $ 34.757 /DAY | | $ | 1,077.47 | |
| 811 | UNDERWRITING FEE TO AMERICAN MORTGAGE EXPRESS | | $ | 350.00 | |
| 811 | DOCUMENT FEE TO AMERICAN MORTGAGE EXPRESS | | $ | 250.00 | |
| | FUNDING FEE TO AMERICAN MORTGAGE EXPRESS | | $ | 175.00 | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | **Total Prepaid Finance Charge:** | $ | 3,062.47 | |
| | These are FEES NOT paid by the Borrower | | | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |

| Total Estimated Funds needed to close | | | Total Estimated Monthly Payment | | |
|---|---|---|---|---|---|
| | | | Interest Only | $ | 1,042.71 |
| Down Payment | $ | | Total Real Estate Taxes | $ | 255.40 |
| Estimated Closing Costs | $ | 2,510.00 | Flood & Hazard Insurance | $ | |
| Estimated Prepaid Items/Reserves | $ | 2,354.47 | Mortgage Insurance | $ | |
| Other:  TOTAL PAYOFFS | $ | | Total Other Impounds | $ | |
| TOTAL EST. FUNDS NEEDED TO CLOSE | $ | 4,864.47 | TOTAL MONTHLY PAYMENT | $ | 1,298.11 |

This form does not cover all items you will be required to pay in cash at settlement; for example, deposits in escrow for real estate taxes and insurance may be different.  You may wish to inquire as to the amounts of such other items.  You may be required to pay other additional amounts at settlement.
Neither you nor the lender previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure. Each of the Undersigned acknowledge receiving and reading a completed copy of this disclosure.

[X] All disclosures are estimates

| _Klara Gianna Gallusz_  12-14-05 | | _____ |
|---|---|---|
| KLARA GIANNA GALLUSZ          Date | | Date |
| _____          Date | | _____          Date |

LENDER SUPPORT SYSTEMS, INC. GEN-002.GEN (00/04)

Exhibit 6

Page 93 of 879

# Exhibit 7

**From the Office of**
KLARA GIANNA GALLUSZ
3639 MIDWAY DRIVE UNIT 408 SAN DIEGO, CALIFORNIA 92110

Date executed:  4/22/24

To Whom It May Concern

As a courtesy you are receiving Notice of an action recently taken regarding a matter that may concern and affect you.  The security instrument #**2005-1098367**, recorded with the San Diego County Recorder, California has been rescinded.  The party(s) to the contract have mutually agreed to rescind the contract due to "ignorant mistake" and error. The ignorant mistake goes to a material aspect of the contract.  You are receiving this Notice because you will be directly impacted by the rescission of the party(s) because you have been benefiting from the contract without having put forth any consideration, and no consideration has been given by a promisee in order for you to be a third-party beneficiary.  Due to the fact that you are not a party to the contract and are not an intentional beneficiary or donee there is nothing for you to consent, or object, to; however, this rescission will create obligations for you.

All rights/interest mortgaged, granted and conveyed by the contract are returned to KLARA GIANNA GALLUSZ, A SINGLE WOMAN.  Any and all payments you received are to be sent back to KLARA GIANNA GALLUSZ, A SINGLE WOMAN forthwith, immediately and without delay.  You are to return all monies you have received unjustly within twenty (20) days from the date you receive this Notice.  For clarification, the date you receive this Notice is the date indicated by The United States Post Office on the PS3811, the green return receipt form.

KLARA GIANNA GALLUSZ, A SINGLE WOMAN reserves the right to litigate against you should you fail to return said funds and you agree be held liable for our legal fees and court costs, interest on the amounts due and owing from you and daily administrative fees.  You may not contact us via phone or email. All communication is required to be conducted via The United States Post Office.  Please note that we cannot give you legal advice as we are not legal persons; therefore, we recommend that you consult with an attorney regarding any questions you may have on this matter.

IF you feel that you have received this Notice in error and that you are injured/damaged by the rescission THEN you have twenty (20) days from the date you receive this Notice to bring forth any evidence that you put forth any consideration toward our contract and evidence of the actual injury/damage.  We are happy to consider any claims of injury/damage that are brought forth within the expressed time limit.

By: *Klara Gianna Gallusz*
For: KLARA GIANNA GALLUSZ

DOC# 2024-0092961

Apr 15, 2024  01:37 PM
OFFICIAL RECORDS
JORDAN Z. MARKS,
SAN DIEGO COUNTY RECORDER
FEES: $29.00    (SB2 Atkins: $0.00)
PCOR: YES
PAGES: 6

RECORDING REQUESTED BY:
KLARA GIANNA GALLUSZ
3639 MIDWAY DR UNIT 408
SAN DIEGO, CALIFORNIA 92110
AND WHEN RECORDED
MAIL TO: MAIL TAX STATEMENT TO:
THE LIBERTAS IMPERIUM TRUST
3639 MIDWAY DRIVE UNIT 408
SAN DIEGO, CALIFORNIA 92110

*THIS SPACE FOR RECORDER'S USE*

# GRANTOR DEED

(Please fill in document title(s) on this line)

1  ☐  Exempt from fee per GC27388.1 due to being recorded in connection with concurrent transfer that is subject to the imposition of documentary transfer tax, or,

2  ☐  Exempt from fee per GC27388.1 due to being recorded in connection with a transfer that was subject to documentary transfer tax which was paid on document recorded previously on _____ (date*) as document number _____ of Official Records, or,

3  ☐  Exempt from fee per GC27388.1 due to the maximum fees being paid on documents in this transaction, or,

4  ☐  Exempt from fee per GC27388.1 due to the maximum fees having been paid on documents in the transaction(s) recorded previously on _____ (date*) as document number(s) _____ of Official Records, or,

5  ☑  Exempt from fee per GC27388.1, document transfers real property that is a residential dwelling to an owner-occupier, or, document is recorded in connection with concurrent transfer that is a residential dwelling to an owner-occupier, or,

6  ☐  Exempt from fee per GC27388.1 due to it being recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier. The recorded document transferring the dwelling to the owner-occupier was recorded on _____ (date*) as document number(s) _____

7  ☐  Exempt from fee per GC27388.1 due to being executed or recorded by the federal government in accordance with the Uniform Federal Lien Registration Act, by the state, or any county, municipality or other political subdivision of the state, or,

8  ☐  Exempt from the fee per GC27388.1 (a) (1); Not related to real property, or,

9  ☐  Exempt from fee under GC27388.1 for the following reasons:

_____

THIS PAGE ADDED TO PROVIDE SENATE BILL 2 EXEMPTION INFORMATION
(Additional recording fee applies)

Rev. 1/19    *The Prior Recording Reference must have been recorded within the last 60 days and is subject to review

Exhibit 7

RECORDING REQUESTED AND
PREPARED BY:
KLARA GIANNA GALLUSZ
3639 MIDWAY DRIVE UNIT 408
SAN DIEGO, CALIFORNIA 92110


AFTER RECORDING RETURN TO:
THE LIBERTAS IMPERIUM TRUST
3639 MIDWAY DRIVE UNIT 408
**SAN DIEGO, CALIFORNIA 92110**

*This Space for Recorder's Use Only*

### GRANTOR DEED

Pursuant to the Garn-St Germain Act, this Grantor Deed, dated April 15, 2024, is made by KLARA GIANNA GALLUSZ, Grantor, to THE LIBERTAS IMPERIUM TRUST, Grantee.

For and in consideration of the total sum of zero "dollars" ($0.00) and no other good and valuable consideration. Freely granted, without reservation, and freely received. Grantor hereby grants in "Fee Simple Absolute"* unto the Grantee all the land, together with any improvements thereon and herein described as follows:

Page 1                                                      20482
Escrow No. ███████████

### LEGAL DESCRIPTION EXHIBIT

A CONDOMINIUM COMPOSED OF:

PARCEL NO. 1:

AN UNDIVIDED ONE-THREE HUNDRED THIRTY-THIRD (1/333RD) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING WITHOUT LIMITATION THE COMMON AREAS DEFINED IN THE DECLARATION REFERRED TO BELOW, IN LOT 1 OF CAROUSEL ISLE, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 10056, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, APRIL 8, 1981. EXCEPTING THEREFROM ALL LIVING AREA UNITS, BALCONIES, PATIOS, STORAGE SPACES, TANDEM PARKING SPACES, AND

Page 1 of 4

Exhibit 7

Page 97 of 879