# Exhibit 1

DOC # 2005-1098367

20484

58044687-11

DEC 22, 2005    4:19 PM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:        90.00
PAGES:       28         DA:        1

**Recording requested by·**
**CHICAGO TITLE COMPANY**

2005-1098367

Recording Requested By:
AMERICAN MORTGAGE EXPRESS FINANCIAL

Return To:
AMERICAN MORTGAGE EXPRESS FINANCIAL

10251 VISTA SORRENTO PARKWAY, SUITE 300
SAN DIEGO, CA 92121

Prepared By:

APN: 441-090-39-63

————————————————[Space Above This Line For Recording Data]————————————————

# DEED OF TRUST

LOAN NO.:  ▮▮▮2177                          MIN  ▮▮▮▮▮▮1778
ESCROW NO.:  58044687-N08                   MERS Phone: 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated          **DECEMBER 14, 2005**          ,
together with all Riders to this document.
(B) **"Borrower"** is
KLARA GIANNA GALLUSZ, A SINGLE WOMAN

Borrower's address is 3050 RUE D ORLEANS # 410, SAN DIEGO, CA 92110
Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is
AMERICAN MORTGAGE EXPRESS FINANCIAL

Lender is a  CORPORATION
organized and existing under the laws of  CALIFORNIA

Initials: KG

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01
VMP-6A(CA) (0207)                    Page 1 of 15          LENDER SUPPORT SYSTEMS, INC MERS6ACA.NEW (05/04)

Exhibit 1
Page 2

**20485**

Lender's address is
**10251 VISTA SORRENTO PARKWAY, SUITE 300, SAN DIEGO, CA  92121**
(D) "Trustee" is
**CHICAGO TITLE INSURANCE COMPANY**
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated     **DECEMBER 14, 2005**
The Note states that Borrower owes Lender

**ONE HUNDRED NINETY TWO THOUSAND FIVE HUNDRED AND NO/100 X X X X X X X X X X X X X X X**
Dollars
(U.S. $ **192,500.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    **JANUARY 01, 2036**
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "RIDERS" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [XX] Adjustable Rate Rider | [XX] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |

[XX] Other(s) [specify] **INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER**
**ADDENDUM TO ADJUSTABLE RATE RIDER**

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: KK

**VMP-6A(CA)** (0207)                    **Page 2 of 15**                    **Form 3005  1/01**

Exhibit 1
Page 3

20486

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|  COUNTY | of | SAN DIEGO | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 441-090-39-63                          which currently has the address of
                                3050 RUE D'ORLEANS # 410                          [Street]
              SAN DIEGO              [City] , California      92110      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

VMP-6A(CA) (0207)                    Page 3 of 15                    Initials: [signature]
                                                                    Form 3005 1/01

Exhibit 1
Page 4

20487

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Exhibit 1
Page 5

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Exhibit 1
Page 6

20489

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Exhibit 1
Page 7

20490

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: KC

Form 3005 1/01

Exhibit 1
Page 8

**20491**

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Exhibit 1
Page 9

20492

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials: _KS_

VMP-6A(CA) (0207)                    Page 9 of 15                    Form 3005 1/01

Exhibit 1
Page 10

20493

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _KS_

Form 3005 1/01

Exhibit 1
Page 11

20494

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: [signature]

Exhibit 1
Page 12

20495

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: KC

Exhibit 1
Page 13

20496

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials:

Exhibit 1
Page 14

20497

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
                                                     -Witness

_____
                                                     -Witness

_____(Seal)        _____(Seal)
KLARA GIANNA GALLUSZ                 -Borrower                                                          -Borrower

_____(Seal)        _____(Seal)
                                                     -Borrower                                                          -Borrower

_____(Seal)        _____(Seal)
                                                     -Borrower                                                          -Borrower

_____(Seal)        _____(Seal)
                                                     -Borrower                                                          -Borrower

Exhibit 1
Page 15

20498

State of CALIFORNIA
County of SAN DIEGO                                    } ss.

On DECEMBER 14, 2005    before me,    Claudette Vera Cruz

personally appeared

KLARA GIANNA GALLUSZ

, personally known to me

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

CLAUDETTE VERA CRUZ
Commission # 1502632
Notary Public - California
San Diego County
My Comm. Expires Jul 30, 2008

Initials: _____

VMP-6A(CA) (0207)                    Page 15 of 15                    Form 3005  1/01

Exhibit 1
Page 16

20499

Loan Name: KLARA GIANNA GALLUSZ                          LOAN NO.: ▮▮▮▮2177

Property Address: 3050 RUE D'ORLEANS # 410, SAN DIEGO, CA  92110

# EXHIBIT  "A"
### LEGAL DESCRIPTION OF PROPERTY

LENDER SUPPORT SYSTEMS INC.  EX-A.FRM  (03/98)

Exhibit 1
Page 17

20500

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)
SEE "ADDENDUM TO ARM RIDER" ATTACHED HERETO AND MADE A PART HEREOF.
SEE "INTEREST-ONLY ADDENDUM TO ARM RIDER" ATTACHED HERETO AND MADE A PART HEREOF.
LOAN NO.: ███2177                                    MIN: █████████1778
                                    MERS Phone: 1-888-679-6377

THIS ADJUSTABLE RATE RIDER is made this    14th    day of    DECEMBER, 2005    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
AMERICAN MORTGAGE EXPRESS FINANCIAL

("Lender") of the same date and covering the property described in the Security Instrument
and located at:

        3050 RUE D'ORLEANS # 410, SAN DIEGO, CA  92110
                    [Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of    6.500    %. The Note provides
for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of    JANUARY, 2011    ,
and on that day every    6th    month thereafter. Each date on which my interest rate
could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for six month U.S. dollar-denominated
deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most
recent Index figure available as of the first business day of the month immediately preceding
the month in which the Change Date occurs is called the "Current Index."

Initials: _____

**Form 3138 1/01**

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN
THE WALL STREET JOURNAL) - Single Family - Fannie Mae Uniform Instrument
**VMP-838R (0402)**                Page 1 of 4            LENDER SUPPORT SYSTEMS INC. 838R.NEW (07/04)

Exhibit 1
Page 18

20501

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO AND ONE QUARTER                                        percentage points
(       2.250       %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at  the first Change Date will not be greater than
12.500       % or less than       2.250       %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than
TWO  AND 000/1000THS                                        percentage points
(     2.000     %) from the rate of interest I have been paying for the preceding          6
months. My interest rate will never be greater than   12.500   % .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

VMP-838R (0402)                     Page 2 of 4                     Form 3138 1/01

Exhibit 1
Page 19

20502

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

VMP-838R (0402)                Page 3 of 4                Initials: _KS_        Form 3138 1/01

Exhibit 1
Page 20

20503

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Klara Gianna Gallusz_ (Seal)
KLARA GIANNA GALLUSZ        -Borrower

_____(Seal)
                       -Borrower

_____(Seal)
                       -Borrower

_____(Seal)
                       -Borrower

_____(Seal)
                       -Borrower

_____(Seal)
                       -Borrower

_____(Seal)
                       -Borrower

_____(Seal)
                       -Borrower

VMP-838R (0402)              Page 4 of 4              Form 3138 1/01

Exhibit 1
Page 21

20504

# CONDOMINIUM RIDER

LOAN NO.: ▉▉2177

MIN: ▉▉▉▉▉▉1778
MERS Phone: 1-888-679-6377

THIS CONDOMINIUM RIDER is made this    14th    day of    DECEMBER, 2005    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
AMERICAN MORTGAGE EXPRESS FINANCIAL

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
3050 RUE D'ORLEANS # 410, SAN DIEGO, CA 92110

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

PACIFIC ISLE

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in

**MULTISTATE CONDOMINIUM RIDER** - Single Family -
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
V-8R (0411)                                    Page 1 of 3

Initials: _KG_
Form 3140 1/01
LENDER SUPPORT SYSTEMS INC. 8R.NEW (03/05)

Exhibit 1
Page 22

20505

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: ____

V-8R (0411)                    Page 2 of 3                    Form 3140 1/01

Exhibit 1
Page 23

20506

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_Klara Gianna Gallusz_ _____(Seal)    _____(Seal)
KLARA GIANNA GALLUSZ        -Borrower                                        -Borrower

_____(Seal)    _____(Seal)
                            -Borrower                                        -Borrower

_____(Seal)    _____(Seal)
                            -Borrower                                        -Borrower

_____(Seal)    _____(Seal)
                            -Borrower                                        -Borrower

**V-8R (0411)**                    **Page 3 of 3**                    **Form 3140 1/01**

Exhibit 1
Page 24

*20507*

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE RIDER

LOAN NO.: ████2177

MIN: ███████1778
MERS Phone: 1-888-679-6377

PROPERTY ADDRESS: 3050 RUE D'ORLEANS # 410, SAN DIEGO, CA 92110

**THIS ADDENDUM** is made this    14th    day of  DECEMBER, 2005          , and is incorporated into
and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this
Addendum executed by the undersigned and payable to
AMERICAN MORTGAGE EXPRESS FINANCIAL

(the "Lender").

**THIS ADDENDUM** supersedes Section 4(C) of the Rider.  None of the other provisions of the Note are
changed by this Addendum.

4.      **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
        (C)      **Calculation of Changes**
                Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO AND ONE QUARTER                          percentage point(s) ( 2.250    %) to the Current Index
for such Change Date.  The Note Holder will then round the result of this addition to the nearest
one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this
rounded amount will be my new interest rate until the next Change Date.

                During the Interest-Only Period, the Note Holder will then determine the amount of the
monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my
monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I
make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of
principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to
the amount necessary to pay interest at the then current interest rate on the lower principal balance.  At the
end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the
amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am
expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly
payments over the remaining term of the Note.  The result of this calculation will be the new amount of
my monthly payment.  After the end of the Interest-Only Period, my payment will not be reduced due to
voluntary prepayments.

Initials: _KB_

Form 603F                              Page 1 of 2              LENDER SUPPORT SYSTEMS INC. AURIORDR.ADD (06/04)

Exhibit 1
Page 25

20508

_____(Seal)        _____(Seal)
KLARA GIANNA GALLUSZ    -Borrower                              -Borrower


_____(Seal)        _____(Seal)
                    -Borrower                              -Borrower


_____(Seal)        _____(Seal)
                    -Borrower                              -Borrower


_____(Seal)        _____(Seal)
                    -Borrower                              -Borrower


Page 2 of 2

Exhibit 1
Page 26

20509

# ADDENDUM TO ADJUSTABLE RATE RIDER

MIN: ████████1778                                          LOAN NO.: ███2177
MERS Phone: 1-888-679-6377

This addendum is made  DECEMBER 14, 2005  and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
3050 RUE D'ORLEANS # 410, SAN DIEGO, CA  92110

## AMENDED PROVISIONS

In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.500       % or less than          2.250          %.  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than    TWO  AND  000/1000THS percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding six (6) months.  My interest rate will never be greater than        12.500        %.  My interest rate will never be less than        2.250        %.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Initials:

1202 LIBOR Addendum to Rider                      Page 1 of 2          LENDER SUPPORT SYSTEMS, INC. AURA1202.AUR (07/05)

Exhibit 1
Page 27

20510

     If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

     In Witness Thereof, Trustor has executed this addendum.

Witness

_____

_____(Seal)          _____(Seal)
KLARA GIANNA GALLUSZ              -Borrower                                          -Borrower

_____(Seal)          _____(Seal)
                                 -Borrower                                          -Borrower

1202 LIBOR Addendum to Rider                          Page 2 of 2

Exhibit 1
Page 28

# DESCRIPTION

20511

Order No. 058044687

A CONDOMINIUM COMPOSED OF:

PARCEL NO. 1:

AN UNDIVIDED ONE-THREE HUNDRED THIRTY-THIRD (1/333RD) FEE SIMPLE INTEREST AS A TENANT IN
COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING WITHOUT LIMITATION THE COMMON AREAS
DEFINED IN THE DECLARATION REFERRED TO BELOW, IN LOT 1 OF CAROUSEL ISLE, IN THE CITY OF
SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 10056,
FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, APRIL 8, 1981.  EXCEPTING
THEREFROM ALL LIVING AREA UNITS, BALCONIES, PATIOS, STORAGE SPACES, TANDEM PARKING
SPACES, AND PARKING SPACES AS SHOWN ON THE CONDOMINIUM PLAN RECORDED DECEMBER 4, 1981 AS
FILE NO. 81-382510 OF OFFICIAL RECORDS.

ALSO EXCEPT ALL MINERALS, OILS, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES AND ALL
UNDERGROUND WATER IN OR UNDER OR WHICH MAY BE PRODUCED FROM SAID LOT WHICH UNDERLIES A
PLAN PARALLEL TO AN 550 FEET BELOW THE PRESENT SURFACE OF SAID LOT FOR THE PURPOSE OF
PROSPECTING FOR, THE EXPLORATION, DEVELOPMENT, PRODUCTION, EXTRACTION AND TAKING OF SAID
MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES AND WATER FROM SAID LOT BY
MEANS OF MINES, WELLS, DERRICKS OR OTHER EQUIPMENT FROM SURFACE LOCATIONS ON ADJOINING OR
NEIGHBORING LAND OR LYING OUTSIDE OF THE ABOVE-DESCRIBED LOT, IT BEING UNDERSTOOD THAT
THE OWNER OF SUCH MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES AND WATER,
AS SET FORTH ABOVE, SHALL HAVE NO RIGHT TO ENTER UPON THE SURFACE OF ANY PORTION THEREOF
ABOVE SAID PLANE PARALLEL TO AND 550 FEET BELOW THE PRESENT SURFACE OF THE SAID LOT FOR
ANY PURPOSE WHATSOEVER.

PARCEL NO. 2:

LIVING AREA UNIT LA-210, BALCONY B---, TANDEM PARKING SPACE TPS---, PARKING SPACE, PS-22
AND STORAGE SPACE 16, AS SHOWN AND DESCRIBED ON THE CONDOMINIUM PLAN RECORDED DECEMBER 4,
1981 AS FILE NO. 81-382510 OF OFFICIAL RECORDS OF SAN DIEGO COUNTY, CALIFORNIA.

PARCEL NO. 3:

A NON-EXCLUSIVE EASEMENT FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE,
ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES APPURTENANT TO PARCEL
2 DESCRIBED HEREIN THRU THE COMMON AREA AS THE COMMON AREA IS SET FORTH IN THE
DECLARATION OF RESTRICTIONS RECORDED DECEMBER 4, 1981 AS FILE NO. 81-382511 OF OFFICIAL
RECORDS AND ANY AMENDMENTS THERETO.

Exhibit 1
Page 29

Exhibit 2

DOC # 2012-0386586

Recording Requested By:
**Bank of America**
Prepared By: **Danilo Cuenca**
1800 Tapo Canyon Road
Simi Valley, CA 93063
800-444-4302
When recorded mail to:
**CoreLogic**
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

CA0-ADT 18937265          6/21/2012

DocID#    23711677266983894

Property Address:
**3050 Rue Dorleans Unit 410**
**San Diego, CA 92110-5906**

JUL 03, 2012    11:52 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:          21.00
DA:    1

10126    PAGES:    2

MIN #:          1778    MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA N.A.** whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **AMERICAN MORTGAGE EXPRESS FINANCIAL** |
| Original Borrower(s): | **KLARA GIANNA GALLUSZ, A SINGLE WOMAN** |
| Original Trustee: | **CHICAGO TITLE INSURANCE COMPANY** |
| Date of Deed of Trust: | **12/14/2005** |
| Original Loan Amount: | **$192,500.00** |

Recorded in San Diego County, CA on: 12/22/2005, book N/A, page 20484 and instrument number 2005-1098367

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
「JUN 2 2 2012

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
_____ Mercedes Judilla _____,
_____ Assistant Secretary _____

Exhibit 2
Page 31

10127

State of California
County of Ventura

On __JUN 2 2 2012__ before me, _____, Notary Public, personally appeared
Lillian J  Ellison
_____Mercedes Judilla_____
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

```
                                    ┌─────────────────────────────┐
                                    │      LILLIAN J. ELLISON      │
                                    │    Commission # 1925617      │
                                    │   Notary Public - California │
                                    │      Los Angeles County      │
                                    │  My Comm. Expires Mar 13, 2015│
                                    └─────────────────────────────┘
```

Notary Public: _____Lillian J. Ellison_____   (Seal)
My Commission Expires: ____March 13, 2015____

Exhibit 2
Page 32

# Exhibit 3

Recording Requested By:
**Bank of America, N.A.**
Prepared By:  **Anne-Marie Calderon**
**101 S. Marengo Ave.**
**Pasadena, CA 91101**
**800-444-4302**

When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**



DocID#    **16511677266912244**

Property Address:
**3050 Rue D'orleans # 410**
**San Diego, CA 92110-5906**
CAO-ADT  28659645    2/3/2014  BSI1220



# DOC # 2014-0063110

**FEB 14, 2014    12:02 PM**
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:        21.00
                            DA:        1

**PAGES:        2**



This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **VENTURES TRUST 2013-I-H-R BY MCM CAPITAL PARTNERS, LLC, ITS TRUSTEE** whose address is **7500 OLD GEORGETOWN RD, SUITE 1300, BETHESDA, MD 20814** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Beneficiary: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN MORTGAGE EXPRESS FINANCIAL, ITS SUCCESSORS AND ASSIGNS** |
| Original Borrower(s): | **KLARA GIANNA GALLUSZ, A SINGLE WOMAN** |
| Original Trustee: | **CHICAGO TITLE INSURANCE COMPANY** |
| Date of Deed of Trust: | **12/14/2005** |
| Original Loan Amount: | **$192,500.00** |

Recorded in San Diego County, CA on: **12/22/2005, book N/A, page 20484 and instrument number 2005-1098367**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
**FEB 0 4 2014**

                                    **BANK OF AMERICA, N.A.**

                                    By: _____

                                    **Alexa Aguilar** ,
                                    **Assistant Vice President**

Exhibit 3
Page 34

State of California
County of Los Angeles

On **FEB 04 2014** before me, **Sophie Neary Pok**, Notary Public, personally appeared
**Alexa Aguilar**, who proved to me on the basis of satisfactory evidence to be the person
(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

SOPHIE NEARY POK
COMM. #1946008
Notary Public - California
Orange County
My Comm. Expires July 30, 2015

Notary Public: **Sophie Neary Pok**          (Seal)
My Commission Expires: **July 30, 2015**

# Exhibit 4

DOC#   2016-0466904



Sep 07,  2016   10:56 AM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES:   $21.00

PAGES: 2

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.

[AND WHEN RECORDED MAIL TO]
MCM CAPITAL PARTNERS, LLC
7500 OLD GEORGETOWN RD.
BETHESDA, MD 20814

Record and Return to:
Meridian Asset Services, Inc.
Attn: Document Intake
780 94th Ave North, Suite 102
St. Petersburg, FL 33702

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Regarding this instrument, contact FAY Servicing, LLC, 440 S Lasalle Suite 2000, Chicago, IL 60605, telephone # 312-780-0438, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, OHA NEWBURY VENTURES, L.P., WHOSE ADDRESS IS 7500 Old Georgetown Rd., Suite 1300, Bethesda, MD 20814, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, without recourse, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to CITIBANK, N.A. AS TRUSTEE FOR CMLTI ASSET TRUST, WHOSE ADDRESS IS 388 Greenwich St., 14th floor, New York, NY 10013, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by KLARA GIANNA GALLUSZ and recorded on 12/22/2005 as Doc # 2005-1098367 in the office of the SAN DIEGO County Recorder, CA

Dated on  3 / 16 / 16  (MM/DD/YYYY)
OHA NEWBURY VENTURES, L.P.

By: _____
Steven Trowern
VICE PRESIDENT

## ACKNOWLEDGEMENT

STATE OF MARYLAND
COUNTY OF MONTGOMERY
On  3 / 16 / 16  (MM/DD/YYYY), before me, the under-signed officer, personally appeared Steven Trowern, VICE PRESIDENT of OHA NEWBURY VENTURES, L.P., who acknowledged that he/she/they, as such VICE PRESIDENT, being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself /herself/themselves as VICE PRESIDENT. In witness whereof I hereunto set my hand and official seal. He/she/they is (are) personally known to me.


Jamie L. Mertz
Notary Public - State of MARYLAND
Commission expires: 06/12/2018

JAMIE L MERTZ
Notary Public
Montgomery County
Maryland
My Commission Expires June 12, 2018

Document Prepared By: MCM Capital Partners 7500 Old Georgetown Rd. Suite 1300 Bethesda, MD 20814 (240) 744-3113
MCMAS 394176814 -- CITI20151231   T1616031207  [PREP-1] FRMCA1

*D0015414590*

Exhibit 4
Page 37

Exhibit 4
Page 38

# Exhibit 5

DOC# 2016-0466905



Sep 07, 2016  10:56 AM

OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES:   $18.00

PAGES: 1

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.

[AND WHEN RECORDED MAIL TO]
MCM CAPITAL PARTNERS, LLC
7500 OLD GEORGETOWN RD.
BETHESDA, MD 20814

Record and Return to:
Meridian Asset Services, Inc.
Attn: Document Intake
780 94th Ave North, Suite 102
St. Petersburg, FL 33702

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**Regarding this instrument, contact FAY Servicing, LLC, 440 S Lasalle Suite 2000, Chicago, IL 60605, telephone #
312-780-0438, which is responsible for receiving payments.**

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned,
**VENTURES TRUST 2013-I-H-R BY MCM CAPITAL PARTNERS, LLLP, F/K/A MCM CAPITAL PARTNERS, LLC,
WHOSE ADDRESS IS 7500 Old Georgetown Rd., Suite 1300, Bethesda, MD 20814, (ASSIGNOR),** by these presents does
convey, grant, assign, transfer and set over the described Deed of Trust, without recourse, representation or warranty, together with
all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to **OHA NEWBURY
VENTURES, L.P., WHOSE ADDRESS IS 7500 Old Georgetown Rd., Suite 1300, Bethesda, MD 20814, ITS SUCCESSORS
AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by KLARA GIANNA GALLUSZ and recorded on 12/22/2005 as **Doc # 2005-1098367** in the office of
the SAN DIEGO County Recorder, CA.

Dated on ___3_/_16_/_16_ (MM/DD/YYYY)
**VENTURES TRUST 2013-I-H-R BY MCM CAPITAL PARTNERS, LLLP, F/K/A MCM CAPITAL PARTNERS, LLC**

By: _____

Steven Trowern
**VICE PRESIDENT**

## ACKNOWLEDGEMENT

STATE OF MARYLAND
COUNTY OF MONTGOMERY
On ___3_/_16_/_16_ (MM/DD/YYYY), before me, the under-signed officer, personally appeared Steven Trowern, VICE
PRESIDENT of VENTURES TRUST 2013-I-H-R BY MCM CAPITAL PARTNERS, LLLP, F/K/A MCM CAPITAL PARTNERS,
LLC, who acknowledged that he/she/they, as such VICE PRESIDENT, being authorized to do so, executed the foregoing instrument
for the purposes therein contained, by signing the name of the corporation by himself /herself/themselves as VICE PRESIDENT. In
witness whereof I hereunto set my hand and official seal. He/she/they is (are) personally known to me.

_____
Jamie L. Mertz
Notary Public - State of MARYLAND
Commission expires: 06/12/2018

JAMIE L MERTZ
Notary Public
Montgomery County
Maryland
My Commission Expires June 12, 2018

**Document Prepared By: MCM Capital Partners 7500 Old Georgetown Rd. Suite 1300, Bethesda, MD 20814 (240) 744-3113**
MCMAS 394247367 -- CITI20151231   T1616033906  [PREP-1] FRMCA1




*D0015111350*

Exhibit 5
Page 40

# Exhibit 6

Recording Requested by Simplifile

**DOC# 2017-0081521**

Feb 21, 2017  09:05 AM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES:  $21.00

PAGES: 2

Prepared By and Return To:
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94th Avenue N., Suite 102
St. Petersburg, FL 33702
(727) 497-4650

**PIN# 441-090-39-63**

Space above for Recorder's use

2712292

Loan No: 7749
Svcr Ln No: 8876
Custodian ID: 227795586

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **CITIBANK, N.A., AS TRUSTEE FOR CMLTI ASSET TRUST**, whose address is **388 GREENWICH STREET, 14TH FLOOR, NEW YORK, NY 10013**, (ASSIGNOR), does hereby grant, assign and transfer to **LPP MORTGAGE LTD.**, whose address is **6000 LEGACY DRIVE PLANO, TX 75024**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **12/14/2005**
Original Loan Amount: **$192,500.00**
Executed by (Borrower(s)): **KLARA GIANNA GALLUSZ**
Original Trustee: **CHICAGO TITLE INSURANCE COMPANY**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN MORTGAGE EXPRESS FINANCIAL, ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book N/A, Page N/A,
Document/Instrument No: **2005-1098367** in the Recording District of **SAN DIEGO, CA**, Recorded on **12/22/2005**.

Property more commonly described as: **3050 RUE D'ORLEANS #410, SAN DIEGO, CALIFORNIA 92110**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date:  11-21-2016

**CITIBANK, N.A., AS TRUSTEE FOR CMLTI ASSET TRUST, BY FAY SERVICING, LLC, ITS ATTORNEY-IN-FACT**

By: _____
    Anthony Frank
Title: _____
      Assistant Secretary

Witness Name: Marquela Buford

7749  OHA0001  2712292

Exhibit 6
Page 42

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of ___IL___
County of ___Cook___

On __11-21-2016__, before me, __Monique Gray__, a Notary Public, personally appeared ___Anthony Frank___, __Assistant Secretary__ of/for **FAY SERVICING, LLC, AS ATTORNEY-IN-FACT FOR CITIBANK, N.A., AS TRUSTEE FOR CMLTI ASSET TRUST,** personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of __IL__ that the foregoing paragraph is true and correct. I further certify ___Anthony Frank___, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_(signature)_

(Notary Name): __Monique Gray__
My commission expires: __5-10-2020__

"OFFICIAL SEAL"
MONIQUE GRAY
Notary Public, State of Illinois
My Commission Expires 5/10/2020

7749 OHA0001 2712292

Exhibit 6
Page 43

# Exhibit 7

+
6\2

RECORDING REQUESTED BY:

KLARA GIANNA GALLUSZ
3639 MIDWAY DR UNIT 408
SAN DIEGO, CALIFORNIA 92110
AND WHEN RECORDED
MAIL TO: MAIL TAX STATEMENT TO:
THE LIBERTAS IMPERIUM TRUST
3639 MIDWAY DRIVE UNIT 408
SAN DIEGO, CALIFORNIA 92110

DOC# 2024-0092961

Apr 15, 2024   01:37 PM
OFFICIAL RECORDS
JORDAN Z. MARKS,
SAN DIEGO COUNTY RECORDER
FEES: $29.00   (SB2 Atkins: $0.00)
PCOR: YES
PAGES: 6

*THIS SPACE FOR RECORDER'S USE*

## GRANTOR DEED

(Please fill in document title(s) on this line)

1 ☐ Exempt from fee per GC27388.1 due to being recorded in connection with concurrent transfer that is subject to the imposition of documentary transfer tax, or,

2 ☐ Exempt from fee per GC27388.1 due to being recorded in connection with a transfer that was subject to documentary transfer tax which was paid on document recorded previously on _____ (date*) as document number_____ of Official Records, or,

3 ☐ Exempt from fee per GC27388.1 due to the maximum fees being paid on documents in this transaction, or,

4 ☐ Exempt from fee per GC27388.1 due to the maximum fees having been paid on documents in the transaction(s) recorded previously on _____ (date*) as document number(s) _____ of Official Records, or,

5 ☒ Exempt from fee per GC27388.1, document transfers real property that is a residential dwelling to an owner-occupier, or, document is recorded in connection with concurrent transfer that is a residential dwelling to an owner-occupier, or,

6 ☐ Exempt from fee per GC27388.1 due to it being recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier. The recorded document transferring the dwelling to the owner-occupier was recorded on _____ (date*) as document number(s) _____

7 ☐ Exempt from fee per GC27388.1 due to being executed or recorded by the federal government in accordance with the Uniform Federal Lien Registration Act, by the state, or any county, municipality or other political subdivision of the state, or,

8 ☐ Exempt from the fee per GC 27388.1 (a) (1); Not related to real property, or,

9 ☐ Exempt from fee under GC27388.1 for the following reasons:

THIS PAGE ADDED TO PROVIDE SENATE BILL 2 EXEMPTION INFORMATION
(Additional recording fee applies)

Rev 1/19          *The Prior Recording Reference must have been recorded within the last 60 days and is subject to review

Exhibit 7
Page 45

**RECORDING REQUESTED AND
PREPARED BY:**
KLARA GIANNA GALLUSZ
3639 MIDWAY DRIVE UNIT 408
SAN DIEGO, CALIFORNIA 92110


**AFTER RECORDING RETURN TO:**
THE LIBERTAS IMPERIUM TRUST
3639 MIDWAY DRIVE UNIT 408
**SAN DIEGO, CALIFORNIA 92110**

*This Space for Recorder's Use Only*

---

### GRANTOR DEED

Pursuant to the Garn-St Germain Act, this Grantor Deed, dated April 15, 2024, is made by KLARA GIANNA GALLUSZ, Grantor, to THE LIBERTAS IMPERIUM TRUST, Grantee.

For and in consideration of the total sum of zero "dollars" ($0.00) and no other good and valuable consideration. Freely granted, without reservation, and freely received. Grantor hereby grants in "Fee Simple Absolute"* unto the Grantee all the land, together with any improvements thereon and herein described as follows:

Page 1                                                        20482
Escrow No. 58044687 – N08

LEGAL DESCRIPTION EXHIBIT

A CONDOMINIUM COMPOSED OF:

PARCEL NO. 1:

AN UNDIVIDED ONE-THREE HUNDRED THIRTY-THIRD (1/333RD) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING WITHOUT LIMITATION THE COMMON AREAS DEFINED IN THE DECLARATION REFERRED TO BELOW, IN LOT 1 OF CAROUSEL ISLE, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 10056, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, APRIL 8, 1981. EXCEPTING THEREFROM ALL LIVING AREA UNITS, BALCONIES, PATIOS, STORAGE SPACES, TANDEM PARKING SPACES, AND

Page 1 of 4

Exhibit 7
Page 46

PARKING SPACES AS SHOWN ON THE CONDOMINIUM PLAN RECORDED DECEMBER 4,
1981 AS FILE NO. 81-382510 OF OFFICIAL RECORDS.

ALSO EXCEPT ALL MINERALS, OILS, GAS, PETROLEUM, OTHER HYDROCARBON
SUBSTANCES AND ALL UNDERGROUND WATER IN OR UNDER OR WHICH MAY BE
PRODUCED FROM SAID LOT WHICH  UNDERLIES A PLAN PARALLEL TO AN 550 FEET
BELOW THE PRESENT SURFACE OF SAID LOT FOR THE PURPOSE OF PROSPECTING
FOR, THE EXPLORATION, DEVELOPMENT, PRODUCTION, EXTRACTION AND TAKING
OF SAID MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES
AND WATER FROM SAID LOT BY MEANS OF MINES, WELLS, DERRICKS OR OTHER
EQUIPMENT FROM SURFACE LOCATIONS ON ADJOINING OR NEIGHBORING LAND OR
LYING OUTISDE OF THE ABOVE-DESCRIBED LOT, IT BEING UNDERSTOOD THAT THE
OWNER OF SUCH MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON
SUBSTANCES AND WATER, AS SET FORTH ABOVE, SHALL HAVE NO RIGHT TO ENTER
UPON THE SURFACE OF ANY PORTION THEREOF ABOVE SAID PLANE PARALLEL TO
AND 550 FEET BELOW THE PRESENT SURFACE OF THE SAID LOT FOR ANY PURPOSE
WHATSOEVER.

PARCEL NO. 2:

LIVING AREA UNIT LA-210, BALCONY B---, TANDEM PARKING SPACE TPS---,
PARKING SPACE, PS-22 AND STORAGE SPACE 16, AS SHOWN AND DESCRIBED ON
THE CONDOMINIUM PLAN RECORDED DECEMBER 4, 1981 AS FILE NO. 81-382510
OF OFFICIAL RECORDS OF SAN DIEGO COUNTY, CALIFORNIA.

PARCEL NO. 3:

A NON-EXCLUSIVE EASEMENT FOR ACCESS, INGRESS, USE, ENJOYMENT,
DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER
PURPOSES APPURTENANT TO PARCEL 2 DESCRIBED HEREIN THRU THE COMMON AREA
AS THE COMMON AREA IS SET FORTH IN THE DECLARATION OF RESTRICTIONS
RECORDED DECEMBER 4, 1981 AS FILE NO. 81-382511 OF OFFICIAL RECORDS
AND ANY AMENDMENTS THERETO.

DEEDLEGL-08/09/94bk

This Grant, made without reservation, inures to the Grantee, the
Grantee's heirs, executors, administrators, successors and assigns for
ever.

Grantor does hereby waive and release to the Grantee all rights,
including but not limited to, of dower, courtesy, homestead, community
property, and all other right, title and interest in and to the
property described in this Grant.

Page 2 of 4

Exhibit 7
Page 47

Grantor declares documentary transfer tax is zero "dollars" ($0.00)
and is exempt due to transfer into a trust per 11930 of the Revenue
and Taxation Code.

Grantee may have and hold the property described supra with all the
rights and appurtenances thereof, for Grantee, for ever.

Grantor guarantees Grantee that the title to the land, and buildings
thereon, is good, free and clear of encumbrance and/or liens to the
best of Grantor's knowledge.  Grantor is in possession of said property
described supra and has good right to grant the same.  Grantee shall
now quietly enjoy the property described supra.

* Fee Simple.2023. In Websters Dictionary, 1828.

Page 3 of 4

Exhibit 7
Page 48

In Acceptance Hereof:

By: _Klara Gianna Gallusz, Trustee_

Klara Gianna Gallusz, Trustee of
THE LIBERTAS IMPERIUM TRUST

Witness: _William R. McKenzie_

Witness: _Sharon Hancock_

Witness: _Gail L. Dunn_

By: _Klara Gianna Gallusz,_ _4-15-24_

Klara Gianna Gallusz, Grantor

Page 4 of 4

SEE ATTACHED FOR NOTARIZATION

Exhibit 7
Page 49

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT
## (CALIFORNIA CIVIL CODE § 1189)

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                                    )
COUNTY OF _____San Diego_____    )

On _April 15 2024_____ before me, _____Ana Fernandez Ramirez, Notary Public_____
　　　　(Date)　　　　　　　　　　　　　(Here Insert Name and Title of the Officer)

personally appeared Klara Gianna Gallusz------------------------------------------------,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public              (Notary Seal)

ANA FERNANDEZ RAMIREZ
Notary Public - California
San Diego County
Commission # 2403891
My Comm. Expires May 18, 2026

_____ADDITIONAL OPTIONAL INFORMATION_____

**Description of Attached Document**

Title or Type of Document: Grantor Deed_____    Document Date: _N/A_____

Number of Pages: _4____    Signer(s) Other Than Named Above: _N/A--------------------------------

Additional Information: ___N/A----------------------------------------------------

# Exhibit 8

RECORDING REQUESTED AND
PREPARED BY:
KLARA GIANNA GALLUSZ
3639 MIDWAY DRIVE UNIT 408
SAN DIEGO, CALIFORNIA 92110

AND WHEN RECORDED MAIL TAX
STATMENTS TO:
THE LIBERTAS IMPERIUM TRUST
3639 MIDWAY DRIVE UNIT 408
SAN DIEGO, CALIFORNIA 92110

DOC# 2024-0161271



Jun 26, 2024  01:47 PM
OFFICIAL RECORDS
JORDAN Z. MARKS,
SAN DIEGO COUNTY RECORDER
FEES: $23.00  (SB2 Atkins: $0.00)
PCOR: YES
PAGES: 4

*This Space for Recorder's Use Only*

## GRANTOR DEED

(Please fill in document title(s) on this line)

1 ☐ Exempt from fee per GC27388.1 due to being recorded in connection with concurrent transfer that is subject to the imposition of documentary transfer tax, or,

2 ☐ Exempt from fee per GC27388.1 due to being recorded in connection with a transfer that was subject to documentary transfer tax which was paid on document recorded previously on _____ (date*) as document number_____ of Official Records, or,

3 ☐ Exempt from fee per GC27388.1 due to the maximum fees being paid on documents in this transaction, or,

4 ☐ Exempt from fee per GC27388.1 due to the maximum fees having been paid on documents in the transaction(s) recorded previously on _____ (date*) as document number(s) _____ of Official Records, or,

5 ☒ Exempt from fee per GC27388.1, document transfers real property that is a residential dwelling to an owner-occupier, or, document is recorded in connection with concurrent transfer that is a residential dwelling to an owner-occupier, or,

6 ☐ Exempt from fee per GC27388.1 due to it being recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier. The recorded document transferring the dwelling to the owner-occupier was recorded on _____ (date*) as document number(s) _____

7 ☐ Exempt from fee per GC27388.1 due to being executed or recorded by the federal government in accordance with the Uniform Federal Lien Registration Act, by the state, or any county, municipality or other political subdivision of the state, or,

8 ☐ Exempt from the fee per GC 27388.1 (a) (1); Not related to real property, or,

9 ☐ Exempt from fee under GC 27388.1 for the following reasons:

_____

THIS PAGE ADDED TO PROVIDE SENATE BILL 2 EXEMPTION INFORMATION
(Additional recording fee applies)

Rev 1/19          *The Prior Recording Reference must have been recorded within the last 60 days and is subject to review.

Exhibit 8
Page 52

RECORDING REQUESTED AND
PREPARED BY:
THE LIBERTAS IMPERIUM TRUST
3639 MIDWAY DRIVE UNIT 408
SAN DIEGO, CALIFORNIA 92110


AFTER RECORDING RETURN TO:
THE LIBERTAS IMPERIUM TRUST
3639 MIDWAY DRIVE UNIT 408
SAN DIEGO, CALIFORNIA 92110

*This Space for Recorder's Use Only*

## GRANTOR DEED
### Amendment to Deed/Instrument Number 2024-0092961

Pursuant to the Garn-St Germain Act, this Grantor Deed, dated June 25,2024, is made by KLARA GIANNA GALLUSZ, Grantor, to the THE LIBERTAS IMPERIUM TRUST, Grantee.

For and in consideration of the total sum of zero "dollars" ($0.00) and no other good and valuable consideration. Freely granted, without reservation, and freely received.  Grantor declares documentary transfer tax is zero "dollars" ($0.00) and is exempt due to transfer into a trust (R & T Code 11930). Grantor hereby grants/conveys all title right(s) of ownership to WILLIAM RORY MCKENZIE the TRUSTEE for Grantee, THE LIBERTAS IMPERIUM TRUST, all the land, together with any improvements thereon holding legal title on behalf of the Beneficiary(s), and herein described as follows:


LEGAL DESCRIPTION EXHIBIT

A CONDOMINIUM COMPOSED OF:

PARCEL NO. 1:

AN UNDIVIDED ONE-THREE HUNDRED THIRTY-THIRD (1/333RD) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING WITHOUT LIMITATION THE COMMON AREAS DEFINED IN THE DECLARATION REFERRED TO BELOW, IN LOT 1 OF CAROUSEL ISLE, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 10056, FILED IN THE OFFICE OF THE COUNTY RECORDER OF

Page 1 of 3

Exhibit 8
Page 53

SAN DIEGO COUNTY, APRIL 8, 1981.  EXCEPTING THEREFROM ALL LIVING AREA
UNITS, BALCONIES, PATIOS, STORAGE SPACES, TANDEM PARKING SPACES, AND
PARKING SPACES AS SHOWN ON THE CONDOMINIUM PLAN RECORDED DECEMBER 4,
1981 AS FILE NO. 81-382510 OF OFFICIAL RECORDS.

ALSO EXCEPT ALL MINERALS, OILS, GAS, PETROLEUM, OTHER HYDROCARBON
SUBSTANCES AND ALL UNDERGROUND WATER IN OR UNDER OR WHICH MAY BE
PRODUCED FROM SAID LOT WHICH  UNDERLIES A PLAN PARALLEL TO AN 550 FEET
BELOW THE PRESENT SURFACE OF SAID LOT FOR THE PURPOSE OF PROSPECTING
FOR, THE EXPLORATION, DEVELOPMENT, PRODUCTION, EXTRACTION AND TAKING
OF SAID MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES
AND WATER FROM SAID LOT BY MEANS OF MINES, WELLS, DERRICKS OR OTHER
EQUIPMENT FROM SURFACE LOCATIONS ON ADJOINING OR NEIGHBORING LAND OR
LYING OUTISDE OF THE ABOVE-DESCRIBED LOT, IT BEING UNDERSTOOD THAT THE
OWNER OF SUCH MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON
SUBSTANCES AND WATER, AS SET FORTH ABOVE, SHALL HAVE NO RIGHT TO ENTER
UPON THE SURFACE OF ANY PORTION THEREOF ABOVE SAID PLANE PARALLEL TO
AND 550 FEET BELOW THE PRESENT SURFACE OF THE SAID LOT FOR ANY PURPOSE
WHATSOEVER.

PARCEL NO. 2:

LIVING AREA UNIT LA-210, BALCONY B---, TANDEM PARKING SPACE TPS---,
PARKING SPACE, PS-22 AND STORAGE SPACE 16, AS SHOWN AND DESCRIBED ON
THE CONDOMINIUM PLAN RECORDED DECEMBER 4, 1981 AS FILE NO. 81-382510
OF OFFICIAL RECORDS OF SAN DIEGO COUNTY, CALIFORNIA.

PARCEL NO. 3:

A NON-EXCLUSIVE EASEMENT FOR ACCESS, INGRESS, USE, ENJOYMENT,
DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER
PURPOSES APPURTENANT TO PARCEL 2 DESCRIBED HEREIN THRU THE COMMON AREA
AS THE COMMON AREA IS SET FORTH IN THE DECLARATION OF RESTRICTIONS
RECORDED DECEMBER 4, 1981 AS FILE NO. 81-382511 OF OFFICIAL RECORDS
AND ANY AMENDMENTS THERETO.

This Grant, made without reservation, inures to the Grantee, the
Grantee's heirs, executors, administrators, successors and assigns for
ever.

Grantor does hereby waive and release to the Grantee all rights,
including but not limited to, of dower, curtesy, homestead, community
property, and all other right, title and interest in and to the
property described in this Grant.

Grantee may have and hold the property described supra with all the
rights and appurtenances thereof, for Grantee, for ever.

Page 2 of 3

Exhibit 8
Page 54

Grantor guarantees Grantee that the title to the land, and buildings thereon, is good, free and clear of encumbrance and/or liens to the best of Grantor's knowledge.  Grantor is in possession of said property described supra and has good right to grant the same.  Grantee shall now quietly enjoy the property described supra.

APN # 441 090 39 63

In Acceptance Hereof:

Witness: _D. M. Payne_

Witness: _____

By: _William Roy McKizie_, Trustee

Trustee of THE LIBERTAS IMPERIUM TRUST

By: _Klara Gianna Gallus_ Grantor

For: KLARA GIANNA GALLUSZ

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of _California_
County of _San Diego_
On _June 25 2024_ before me _Ana Fernandez Ramirez Notary Public_,
**Notary Public**, personally appeared _Klara Gianna Gallusz_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of _California_** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ANA FERNANDEZ RAMIREZ
Notary Public - California
San Diego County
Commission # 2403891
My Comm. Expires May 18, 2026

Page 3 of 3

Exhibit 8
Page 55

# Exhibit 9

**WFG National-Default Services**

DOC# 2024-0318998

Nov 15, 2024   04:29 PM
OFFICIAL RECORDS
JORDAN Z. MARKS,
SAN DIEGO COUNTY RECORDER
FEES: $92.00   (SB2 Atkins: $75.00)

PAGES: 1

RECORDING REQUESTED BY:
Prober & Raphael, ALC

AND WHEN RECORDED MAIL TO:
Prober & Raphael, ALC
20750 Ventura Blvd., Suite 108
Woodland Hills, California 91364
Phone: (818) 227-0100

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: **D.077-989**          Title Order Number: **2547582CAD**          APN: **441-090-39-63**

## SUBSTITUTION OF TRUSTEE

WHEREAS, Klara Gianna Gallusz, A Single Woman, was the original Trustor, Chicago Title Insurance Company, was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as beneficiary, as nominee for American Mortgage Express Financial, its successors and assigns , was the original Beneficiary under that certain Deed of Trust dated 12/14/2005 and recorded on 12/22/2005 as Instrument No. 2005-1098367, in book N/A, page N/A   of Official Records in the office of the Recorder of San Diego County, California, and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place of and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned Beneficiary hereby substitutes **PROBER AND RAPHAEL, ALC**, whose address is **20750 Ventura Blvd., Suite 108, Woodland Hills, California 91364**, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number indicates the plural.

Dated _11/7/24_

LPP MORTGAGE, INC. F/K/A LPP MORTGAGE LTD

By _____

Harry Swanson          Authorized Signer
Name and Title

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _Illinois_

County of _Lake_

The foregoing instrument was acknowledged before me this _7th_ day of _November_, 20_24_, by **Harry Swanson** _____, (title) _Authorized Signer_ of **LPP MORTGAGE, INC. F/K/A LPP MORTGAGE LTD**

_____ (Seal)
Erik Baltazar , Notary Public

My commission expires: _April 19, 2025_

Notary ID # _930367_

Title or Rank: _Fc Support staff_

OFFICIAL SEAL
ERIK BALTAZAR
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES Apr. 19, 2025

Exhibit 9
Page 57

# Exhibit 10

WFG National-Default Services

RECORDING REQUESTED BY:
**Prober & Raphael, ALC**
WHEN RECORDED MAIL TO:
**Prober & Raphael, ALC**
**20750 Ventura Blvd., Suite 108**
**Woodland Hills, California 91364**
**Phone: (818) 227-0100**

DOC#  2024-0318999

Nov 15, 2024  04:29 PM
OFFICIAL RECORDS
JORDAN Z. MARKS,
SAN DIEGO COUNTY RECORDER
FEES: $107.00   (SB2 Atkins: $75.00)

PAGES: 6

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: **D.077-989**         APN: **441-090-39-63**     Title Order No.: **2547582CAD**

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**ATTENTION RECORDER: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923(c)(2).)

## IMPORTANT NOTICE
**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION**, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$22,125.20** as of **11/14/2024**, and will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the

1

Exhibit 10
Page 59

TS No.: **D.077-989**

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**LPP MORTGAGE, INC. F/K/A LPP MORTGAGE LTD
C/O Prober & Raphael, ALC
20750 Ventura Blvd., Suite 108
Woodland Hills, California 91364
Phone: (818) 227-0100**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That **PROBER AND RAPHAEL, ALC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **12/14/2005**, executed by **Klara Gianna Gallusz, A Single Woman**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as beneficiary, as nominee for American Mortgage Express Financial, its successors and assigns** , as beneficiary, recorded **12/22/2005**, as Instrument No. **2005-1098367**, in Book **N/A**, Page **N/A**,     of Official Records in the Office of the Recorder of **San Diego** County, California describing land therein as:

**AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST.**
Said obligation including ONE **NOTE(S) FOR THE ORIGINAL** sum of **$192,500.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The installment of Principal, Interest, impounds and late fees which became due on  4/1/2024 together with all subsequent installments of principal, interest, impounds, late fees and foreclosure fees and expenses.  Any advances which may hereafter be made.  All obligations and indebtedness as they become due and charges pursuant to said Note and Deed of Trust.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said agent duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**Dated: 11/14/2024**

2

Exhibit 10
Page 60

TS No.: **D.077-989**

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**PROBER AND RAPHAEL, ALC**

**BY:** _____

**Alexia A. Geokchyan, Trustee Sale Technician**

**A declaration from the mortgage, beneficiary or authorized agent is attached to the Notice of Default.  We are assisting the Beneficiary to collect a debt and any information we obtain will be used for that purpose whether received orally or in writing.**

3

Exhibit 10
Page 61

October 09, 2024

### DECLARATION OF MORTGAGE SERVICER PURSUANT TO
### CALIFORNIA CIVIL CODE § 2923.5(b)

MS1720

Borrower(s): Klara Gianna Gallusz
Mortgage Servicer: LPP MORTGAGE, INC. F/K/A LPP MORTGAGE LTD
Property Address: 3050 Rue D' Orleans 410
                  San Diego CA 92110

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that (check all that apply):

( ) The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2923.5(a)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

(X) The mortgage servicer has tried with the required due diligence to contact the borrower pursuant to California Civil Code §§ 2923.5(a)(2) and 2923.5(e) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure", but has not made contact despite such due diligence. Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

( ) No contact was required by the mortgage servicer because the individual(s) identified above did not meet the definition of "borrower" pursuant to subdivision (c) of California Civil Code § 2920.5 because one or more of the following apply:

  (A) The secured property was surrendered as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent.

  (B) The individual(s) contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

  (C) The individual(s) filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure.

( ) The requirements of California Civil Code § 2923.5 do not apply because the above-referenced loan is not:

    ( ) A first lien mortgage or deed of trust secured by owner-occupied residential real property containing no more than four dwelling units as described in California Civil Code § 2924.15; or

CA840/KLE

Exhibit 10
Page 62

Page 2 of 3                October 09, 2024        Loan Number: [ _____ ]

    ( ) A first lien mortgage or deed of trust secured by
        tenant-occupied residential real property containing no more than
        four dwelling units as described in California Civil Code
        § 2924.15.

Pursuant to California Civil Code § 3273.10(c):

(X) The mortgage servicer has not denied a forbearance request made
    during the effective time period; or

( ) The mortgage servicer denied a forbearance request made during the
    effective time period, and the mortgage servicer provided the attached
    written notice to the borrower that sets forth the specific reason or
    reasons that forbearance was not provided, and if applicable, cites any
    defect in the borrower's request, including an incomplete application or
    missing information, that is curable, and

    ( ) a forbearance was subsequently provided; or

    ( ) a forbearance was not subsequently provided; or

( ) The requirements of California Civil Code § 3273.10 do not apply
    because the borrower:

    (A) was not current on payment as of February 1, 2020; and

    (B) did not request a forbearance during the effective time period due
        to experiencing a financial hardship that prevented the borrower
        from making timely payments on the mortgage obligation due,
        directly or indirectly, to the COVID-19 emergency.

(X) The mortgage servicer is deemed to be in compliance with California
    Civil Code § 3273.10 because:

    ( ) the mortgage servicer has, with respect to a borrower of a
        federally backed mortgage, complied with the relevant provisions
        regarding forbearance in Section 4022 of the federal Coronavirus
        Aid, Relief, and Economic Security Act (the CARES Act)
        (Public Law 116-136), including any amendments or revisions to
        those provisions; or

    (X) the mortgage servicer is deemed to be in compliance with
        California Civil Code § 3273.10 because the mortgage servicer has,
        with respect to a borrower of a nonfederally backed mortgage,
        provided forbearance that is consistent with the requirements of
        the CARES Act for federally backed mortgages.

                                              CA840/KLE

Exhibit 10
Page 63

**Page 3 of 3**          **October 09, 2024**      **Loan Number:**

I certify and represent that this declaration is accurate, complete and
supported by competent and reliable evidence which the mortgage servicer has
reviewed to substantiate the borrower's default and the right to foreclose,
including the borrower's loan status and loan information and the mortgage
servicer's business records.

**LPP MORTGAGE, INC. F/K/A LPP MORTGAGE LTD**

By: _Kevin Mayers_

Name (Please Print): Kevin Mayers_____

Title (Please Print): Authorized Signer_____

Date: _October 9, 2024_

                                      CA840/KLE

Exhibit 10
Page 64

Exhibit 11

## DOC# 2025-0067791

Mar 17, 2025   03:26 PM
OFFICIAL RECORDS
JORDAN Z. MARKS,
SAN DIEGO COUNTY RECORDER
FEES: $95.00   (SB2 Atkins: $75.00)

PAGES: 2

RECORDING REQUESTED BY
**Prober & Raphael, ALC**

.

AND WHEN RECORDED MAIL TO:
**Prober & Raphael, ALC**
**20750 Ventura Blvd., Suite 108**
**Woodland Hills, California 91364**
**Phone: (818) 227-0100**

TS No.: **D.077-989**          APN: **441-090-39-63**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Title Order No.: **2547582CAD**

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 12/14/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: **Klara Gianna Gallusz, A Single Woman**
Duly Appointed Trustee: **PROBER AND RAPHAEL, ALC**
Recorded **12/22/2005** as Instrument No. **2005-1098367** in book **N/A**, page **N/A**   of Official Records in the office of the Recorder of **San Diego** County, California,
Date of Sale: **4/16/2025 at 10:30 AM**
Place of Sale:    **AT THE ENTRANCE TO THE EAST COUNTY REGIONAL CENTER BY THE STATUE, 250 E. MAIN STREET, EL CAJON, CALIFORNIA 92020**
Amount of unpaid balance and other charges: **$157,744.54**
Street Address or other common designation of real property:    **3050 RUE D' ORLEANS**
**San Diego, California 92110**

A.P.N.: **441-090-39-63**

.

Exhibit 11
Page 66

TS No.: **D.077-989**          APN: **441-090-39-63**          Title Order No.: **2547582CAD**

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(855) 986-9342** or visit this Internet Website **www.superiordefault.com**, using the file number assigned to this case **D.077-989**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Website. The best way to verify postponement information is to attend the scheduled sale.

**For sales conducted after January 1, 2021:**
NOTICE TO TENANT: You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call **(855) 986-9342**, or visit this internet website **www.superiordefault.com**, using the file number assigned to this case **D.077-989** to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

Date: 3/7/2025                    **PROBER AND RAPHAEL, ALC**
                                 **20750 Ventura Blvd., Suite 108**
                                 **Woodland Hills, California 91364**
                                 **Sale Line: (855) 986-9342**
                                 **Phone Number: 818-227-0100**


                                 **Rita Terzyan, Trustee Sale Officer**

2

Exhibit 11
Page 67